## COMMONWEALTH *vs.* VALENTINE EWIG.

Hampden.    Sept. 27. — Oct. 20, 1887.    C. ALLEN & HOLMES, JJ., absent.

On a complaint for selling intoxicating liquors,. there was evidence that there was a delivery of liquor by the steward of a club to one of the members of the club, who paid for it, in a city which had voted to grant licenses to sell intoxicating liquors; and books purporting to be the records of the club were put in evidence. The government contended that the club was organized to defraud the city of a license fee; and that the books and records were not genuine, were founded in fraud, and were gotten up to cover the illegal acts of the defendant. The judge instructed the jury, as requested by the defendant, that if the club was a *bona fide* club and the liquors owned in common by the members, and the members on receiving liquors gave money in return, it would not be a sale within the meaning of the statute; and that, "if two or more persons unite in buying intoxicating liquor, and then distribute it among themselves, they do not violate the statute, and the intent with which they do this is immaterial. If they intend in this manner to obtain intoxicating liquor to drink without thereby subjecting any person to the penalties of the statute, they still act with impunity." The judge further instructed the jury, against the objection of the defendant, as follows : "It is not a violation of law if they unite in good faith in dividing it. If two persons buy a gallon of liquor, and divide it among themselves, they act with impunity ; but if this is a mere device to cheat the government out of its license fee, and 'prevent the due execution of law, it is not a protection, and the defendant does not act with impunity." *Held*, that the defendant had no ground of exception.

COMPLAINT to the Police Court of Springfield, alleging that the defendant, on September 12, 1886, at Springfield, sold intoxicating liquor to a person to the complainant unknown.

At the trial in the Superior Court, on appeal, before *Bacon*, J., it appeared in evidence, that, on the evening of the day named in the complaint, the defendant, in the club-room of the club hereinafter described, delivered lager beer to a man whose name was to the complainant unknown. Two police officers, witnesses for the government, testified that they were by a window on the outside of the building, looking through an aperture between the sash of the window and the curtain, and that they could see a part of the room, and heard the man call for lager beer, and that a man delivered what they supposed was lager beer; that they could not distinguish the faces of those present; and that money was passed by the unknown man in payment of the beer, namely, a quarter of a dollar, and that change to the amount of

fifteen cents, namely, a ten-cent piece and a five-cent piece, was returned to him.

The defendant introduced evidence tending to show that he was the steward of a club of about four hundred members, organized on May 1, 1886, and acting under its organization ever since ; that he received a salary as such steward from the club ; that the club had, as officers, a president, treasurer, secretary, and steward, and an executive committee of three; that each member, upon joining the club, paid to the treasurer the sum of one dollar, and received a card certifying his membership ; that the money so obtained was used in buying liquors in the name and as the property of the club ; that a quantity of checks made of zinc, some of the size of a quarter of a dollar silver piece, representing the value of ten cents, and others about the size of a ten-cent silver piece, of the value of five cents, were furnished to the members of the club asking for them, by the treasurer, or, in his absence, by the steward of the club, in any number required, upon the member paying in money the price of said checks.

The defendant and four other witnesses testified that none but members were admitted to the rooms of the club, and none but members were permitted to partake of the liquors of the club, and this was so on the night in question ; and that neither on this night, nor at any time, was money passed in return for liquor or beer, but that the checks above described were given in return for the beer or liquor delivered to the members. The defendant also introduced evidence tending to show that it was the duty of the steward to furnish liquor or beer to the members in return for these checks.

The defendant also introduced evidence tending to show that no one became a member unless his name was proposed and voted on ; that an applicant for admission was rejected if three nay ballots were cast against him ; that upon joining he signed the constitution and paid a membership fee; and that applicants for membership had been rejected.

Books, purporting to be the records of the club, and containing the constitution, by-laws, minutes of the meetings, signatures of all the members, and the treasurer's accounts, were put in evidence, as were also the above-described checks.

It was admitted that, at the preceding municipal election in Springfield, it was voted to grant licenses for the sale of intoxicating liquor.

The government contended that the club was organized to defraud the city of Springfield, the county of Hampden, and the Commonwealth of Massachusetts, of the revenue received from licenses for the sale of intoxicating liquor, and that said books and records were not genuine, and were not the evidence of a genuine organization, and were founded in fraud and deceit, and were gotten up to cover up the illegal acts and transactions of the defendant.

The defendant asked the judge to instruct the jury as follows: " 1. If this was a *bona fide* club, and the liquors owned in common by the members, and the members on receiving liquor gave in return money instead of checks, it would not constitute a sale within the meaning of the statute. 2. If two or more persons unite in buying intoxicating liquor, and then distribute it among themselves, they do not violate the statute, and the intent with which they do this is immaterial. If they intend in this manner to obtain intoxicating liquor to drink without thereby subjecting any person to the penalties of the statute, they still act with impunity."

The judge gave the first instruction requested, and also gave the second, but added this qualification: " It is not a violation of law if they unite in good faith in dividing it. If two persons buy a gallon of liquor, and divide it among themselves, they act with impunity; but if this is a mere device to cheat the government out of its license fee, and prevent the due execution of law, it is not a protection, and the defendant does not act with impunity."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. E. Dunleavy*, for the defendant.

*E. J. Sherman*, Attorney General, for the Commonwealth.

KNOWLTON, J. The contention between the parties upon these exceptions relates solely to the interpretation of the judge's charge. The defendant excepted to the qualification of the last instruction which he had requested. He contends that the jury must have understood the judge as saying, that, if several persons

buy liquor and divide it among themselves, even though the transaction is real and genuine, and do it with a purpose thereby to obtain their liquor more economically than to buy it of some one who is obliged to pay the government a license fee, and with an additional purpose to deprive in that way the government of a license fee which it would otherwise get, the transaction is unlawful.   If that were the meaning of the instruction, it would be clearly wrong.   To ascertain its true interpretation, let us revert to the circumstances under which it was given.   The defendant had introduced evidence that he was one of a club organized for the distribution of liquor among its members.   The Commonwealth contended that the club was organized to defraud the government " of the revenue received from licenses for the sale of intoxicating liquor," and that the books and records put.in evidence " were not genuine, and were not the evidence of a genuine organization, and were founded in fraud and deceit, and were gotten up to cover up the illegal acts and transactions of the defendant."

An important, if not the principal, question of the case was whether this was a real and genuine arrangement for the division of liquor among the owners of it, or was a mere pretence and device to cover up unlicensed sales.   Very likely this question had been fully discussed by counsel.   The presiding judge gave both instructions requested by the defendant.   In the first, he told the jury unqualifiedly that the distribution of liquor of a club among its members would not constitute a sale, even though they gave money in return for it.   In the second, he told them that the distribution of liquor among themselves by the owners of it was not unlawful, whatever their intention might be. Having stated in their baldest form the propositions relied on by the defendant, upon the theory that the liquor was really distributed among the owners of it, he apparently thought it proper to bring to the attention of the jury the rule applicable to the claim of the Commonwealth, that the division testified to was not real, but a mere sham and pretence, and he gave the qualification objected to, saying, " It is not a violation of law for them if they unite in good faith in dividing it.   If two persons buy a gallon of liquor and divide it among themselves, they act with impunity; " — which was equivalent to saying, If it is a real and

genuine division, and not a mere pretence to cover something else, it is lawful. And then, to state the other alternative, he added, " But if this is a mere device to cheat the government out of its license fee, and prevent the due execution of law, it is not a protection, and the defendant does not act with impunity;"—meaning to say, If the transaction is not real, but is a mere form and device under cover of which to sell intoxicating liquor without a license, and so violate the law, it will not avail the defendant in this prosecution. The words " to cheat the government out of its license fee " can hardly mean anything else than " to sell intoxicating liquor without a license; " for the only license fee to which the government is entitled in connection with the delivery of liquors is for sales, and one cannot be cheated out of that which does not belong to him. In view of the attendant circumstances, we think the language of the instructions, taken together, was intended by the judge to be used, and was understood by the jury, in a sense which correctly represents the law.

*Exceptions overruled.**