## Court of Appeals.

*October*, 1889.

## PEOPLE *v.* ANDREWS.

SELLING LIQUOR WITHOUT A LICENSE.—JURISDICTION OF THE SPECIAL SESSIONS.—WHEN SALE OF LIQUOR BY SOCIAL CLUB IS A VIOLATION OF THE STATUTE.

An information under a charge for selling liquor without a license was first filed before a justice of the peace who entered upon an examination of the persons designated in the information. Pending such examination, and before a warrant was issued, the attorney for the complainant notified the justice that he had concluded to proceed no further before him but had decided to take the matter before the grand jury of the county. The justice did nothing further in the case, but thereupon sent the papers to the district attorney. Subsequently the defendant was indicted by the grand jury of the county. *Held*, that although no order of discontinuance was entered by the justice, he acquiesced in the decision to lay the matter before the grand

jury, and what took place amounted to a withdrawal and discontinuance of the case before the magistrate, thus surrendering his jurisdiction of the case, and that the grand jury was subsequently invested with jurisdiction.

Where a steward of an unincorporated social club, upon the request of, and on payment by a member, delivers to a person not a member of the club, liquor belonging to the club, this transaction constitutes a sale within the statute forbidding a sale of liquor without a license.

The defendant, John Andrews, was indicted in the Court of Sessions of Cayuga County, Hon. MARCUS LYON, County Judge, presiding, for selling strong and spirituous liquors to be drank on the premises without having a license.

From the order entered June 5, 1888, upon the conviction, the defendant appealed to the General Term of the Supreme Court in the Fifth Department.

The facts appear in the opinion of the General Term of the Supreme Court and of the Court of Appeals.

The statute relating to the jurisdiction of the Courts of Special Sessions in relation to the unlawful sale of liquor is contained in section 56, subd. 32, of the Code of Criminal Procedure, and is as follows: " Subject to the power of removal provided for in this chapter, Courts of Special Sessions, except in the city and county of New York and the city of Albany, have, in the first instance, exclusive jurisdiction to hear and determine charges of misdemeanors committed within their respective counties, as follows: . . . when a complaint is made to, or a warrant is issued by, a committing magistrate, for a violation of the laws relating to excise, and the regulation of taverns, inns, and hotels, or for unlawfully selling or giving to any Indian spirituous liquors or intoxicating drinks."

*H. Greenfield*, attorney for defendant, appellant.

The complaint having first been made to the committing magistrate, the Oyer and Terminer had no jurisdiction to

indict, or the Sessions to try the defendant, and defendant should be discharged. *Code Crim. Proc.* § 56, subd. 32; People *v.* Starks, 17 *St. Rep.* 234. The mere making of the complaint to a magistrate deprives the Oyer and Terminer and the Sessions of any jurisdiction in such a case, and the same is vested exclusively in the Court of Special Sessions. The proceedings subsequent to the complaint are of no consequence. The evidence showed no sale of intoxicating liquor by defendant. Commonwealth *v.* Ewig, 145 *Mass.* 119. The prosecution, having sat by in silence and thus consented to the manner in which the trial judge submitted the case to the jury, cannot now be heard to say that other questions of fact should have been submitted to the jury and that therefore the defendant should be retried and not discharged. Dounce *v.* Dow, 64 *N. Y.* 411; Merritt *v.* Cole, 14 *Hun,* 324; Winchell *v.* Hicks, 18 *N. Y.* 558; Ormes *v.* Dauchy, 82 *Id.* 443; Dillon *v.* Cockroft, 90 *N. Y.* 649; Frantz *v.* Ireland, 66 *Barb.* 386; Heath *v.* Mahoney, 12 *W. Dig.* 404; Cahill *v.* Austin, 8 *Id.* 416.

*A. P. Rich,* District Attorney, for the people, respondent.

It is no defense to an indictment for retailing liquor without a license that it was owned by another person. *Laws of* 1857, chap. 628, § 13. Marston *v.* State, 59 *Ala.* 61; United States *v.* Wittig, 2 *Lowell Dec.* 466; State *v.* Mercer, 32 *Ill.* 405; Rickart *v.* People, 79 *Ill.* 85; Marmont *v.* State, 48 *Ind.* 21; Commonwealth *v.* Smith, 102 *Mass.* 144. The case of Commonwealth *v.* Ewig, 145 *Mass.* 119, is distinguishable because in that case the delivery was to a member of the club.

The following was the opinion of the General Term :

HAIGHT, J.— Information was first filed before a justice of the peace, who entered upon an examination of the per-

sons designated in the information. Pending such examination and before a warrant was issued, the attorneys for the complainant notified the justice that they had concluded to proceed no further before him, but had decided to take the matter before the grand jury of the county. The justice thereupon did nothing further in the case, but thereupon sent the papers to the district attorney. Subsequently the defendant was indicted by the grand jury of the county, and upon the trial of the indictment, and after the evidence was closed, the defendant asked the court to instruct the jury to acquit the defendant or that his discharge be entered on the ground that it appears from the evidence that neither the grand jury that found the indictment nor the trial court had or or has any jurisdiction of the subject matter, the complaint having been previously made to the Court of the Special Sessions of the county for the same offense charged in the indictment. The court denied the requests, and exception was taken by the defendant.

The provision upon which this motion is based is as follows: " Subject to the power of removal provided for in this chapter, Courts of Special Sessions, except in the city and county of New York and the city of Albany, have, in the first instance, exclusive jurisdiction to hear and determine charges of misdemeanors committed within their respective counties, as follows: . . . when a complaint is made to or a warrant is issued by a committing magistrate for a violation of the law relating to excise and the regulation of taverns, inns, and hotels, or for unlawfully selling or giving to any Indian spirituous liquors or intoxicating drinks." *Code of Crim. Proc.* § 56, subd. 32, as amended by chap. 379 of 1884. The provision is so clear and explicit as to require no interpretation. When a complaint is made to a committing magistrate for a violation of the law relating to excise, the magistrate, subject to the power of removal provided for, obtains exclusive jurisdiction to hear and determine the charge.

In this case complaint in writing was filed with the

magistrate, and under the provisions of this section he acquired exclusive jurisdiction of the case; but it appears that during the preliminary examination of the witnesses for the purpose of determining whether a warrant should issue, the attorney for the complainant decided to take the matter before the grand jury, and so notified the justice. There was no order of discontinuance entered, but the justice appears to have acquiesced in the proposition to lay the matter before the grand jury, for he thereupon sent the papers to the district attorney of the county. We are, consequently, of the opinion that what took place amounted to the withdrawal and discontinuance of the case before the magistrate, and that he acquiesced and consented to such withdrawal and discontinuance, thus surrendering his jurisdiction of the case, and that the grand jury and the Court of Sessions were subsequently invested with jurisdiction.

The defense was that the defendant was a steward of a social club; that the liquor sold by him was to members of the club. The court, in its charge to the jury, stated that it appeared from the evidence that friends of the members of the association sometimes visited the club-house, and that such friends had been delivered liquors, upon the orders of the members, which was paid for by the members; and then charged, in substance, that a delivery of liquors upon the order of a member to a party not a member, and the payment by the member to the steward constitute a sale of intoxicating liquors within the provisions of the statute forbidding such sale without a license. Exception was taken by the defendant to this charge. It was the only question submitted to the jury, and the conviction must be deemed to have been made upon this theory.

Social clubs, for legitimate purposes, are authorized by statute, and when approved by a justice of the Supreme Court of the district in which the club is located, a certificate may be filed and the club incorporated. Under such organizations the property of the club becomes the joint property of its members, and the furnishing of liquors or

wines to the members by the steward is not a violation of the statute, and we do not understand that the entertaining of a guest or a friend by a member with wines or liquor at the club-house would be any more of a violation of the statute than it would if such entertainment was given at his private residence. Commonwealth v. Ewig, 149 *Mass.* 119, We are, consequently, of the opinion that the charge was erroneous and that the exception thereto was well taken.

It is contended, on the part of the district attorney, that the club was a fraudulent concern organized for the purpose of evading the excise law. The evidence tends to show that the defendant had previously been a saloon-keeper occupying the same premises; that he was refused a license, and thereupon this club was organized, and a portion of the premises in which the bar is located was leased to the club; that the defendant became the treasurer and steward of the club; that he has made all the purchases of liquors in the name of the club and sold them to members, to be drank upon the premises, receiving the pay therefor, as such steward. Members on joining the club were required to pay fifty cents, which was returned to them upon their withdrawal. The club was not incorporated. A constitution and by-laws were prepared and introduced in evidence for the purpose of showing the organization of the club. Whilst, as we have stated, the statute authorizes the formation of clubs for legitimate purposes, it does not authorize the formation of a club for the purposes of evading the laws of the State, and if, as it is claimed, this club was organized for such a purpose, if it is merely a scheme and a device to continue the sale of strong and spirituous liquors without a license, thereby evading the laws relating to excise, it operates as no defense or shield to those engaged in the traffic, and it is the duty of the court and jurors to disregard the scheme or device, and faithfully execute the law according to its true spirit and intent.

The difficulty with this case is, that the trial court did not submit to the jury the question as to whether this organ-

ization was a scheme or a device to evade the excise law. On the contrary, the court, in its charge, appears to have assumed that it was a valid and legitimate organization, and that the intoxicating liquors sold by the defendant were the property of the club. The question as to whether the club organization was effected for an illegal purpose was one which should have been submitted to and determined by the jury.

For these reasons the judgment and conviction should be reversed and a new trial ordered, and for that purpose the proceedings are remitted to the Court of Sessions of Cayuga County.

BARKER, P. J., BRADLEY, and DWIGHT, JJ., concurred.

Judgment and conviction reversed and a new trial ordered, and for that purpose the proceedings are remitted to the Court of Sessions of Cayuga County.

From the judgment of the General Term entered January 11, 1889, in accordance with the foregoing opinion both the people and the defendant appealed to the Court of Appeals; the people from the reversal of the judgment of the Court of Sessions, and the defendant from the part of the order of the General Term directing a new trial.

In the Court of Appeals the following opinion was delivered, modifying the opinion of the General Term:

DANFORTH, J.—The defendant was accused of violating the excise law (*Laws* 1857, chap. 628). The charge is that on July 10, 1887, at Moravia, in the county of Cayuga, he sold, by retail, to various persons, strong and spirituous liquors in quantities less than five gallons, without having a license therefor. He was convicted. The General Term of the Supreme Court have reversed the conviction, and ordered a new trial. The plaintiff appeals from the order of reversal, and the defendant appeals from the order directing a new trial.

Two questions are presented: (1) As to the jurisdiction of the court; (2) Whether, within the meaning of the statute, *supra*, there was any sale of liquor by the defendant.

The first question was properly disposed of by the General Term.

As to the second, we are unable to agree with that court. Upon the trial one S., describing Andrews' place, says: "Before May 1, 1887, Andrews occupied the premises as a saloon. The front room is used for a fruit, confectionery, and tobacco store. Back of that, and partitioned off, is a room with a bar, table, and chairs." He also says: "I got whisky and ale of Andrews in the back room, and paid him for it. Some I drank there, and some I took home and drank. Paid him ten cents for that I drank there, and a shilling for that I took home." C., a minor attending school, was often at this place, and drank both ale and whisky, and paid for it. Bought it for others, and paid for it. J. had ale and whisky there, and on one occasion bought half a pint of whisky, for which he paid twenty-five cents, and carried it away. Chase drank there several kinds of liquor,—gin, whisky, and beer,—and paid for it, ten cents for gin and whisky, and five cents for beer. Jones says the place was a saloon soon after it was built, and Andrews has always run it. Jones frequently drank there, bought whisky by the glass, and paid Andrews or Keeler for it. Keeler testified that he was employed by the defendant at this place, and paid by him. He says: "I wait on customers to cigars, fruits, and confectionery, and also wait on members of the club. Since July 10, last, I have delivered both ale and whisky to members of the club there by the drink, and took pay therefor in cash. Have done this a good many times. The sales that have been made by me have all been made by Andrews' direction." Upon cross-examination by defendant of these witnesses, they described themselves as members of the "Valley Social Club," and it appeared that when persons not members came in with a member and called for liquor it was supplied, but

payment made by the member.    It was shown that neither Andrews nor the club had a license.    It was refused to Andrews in May, 1887, and on June 1, 1887, the club was organized.

At the close of the plaintiff's case the defendant asked to be discharged upon the ground that there was no proof of a sale of intoxicating liquors, ale, or wines by him, and, being refused, went into evidence.    Andrews, the defendant, testified that the description of the place by witness S. was correct; that in the front room he had cigars, tobacco, fruit, and confectionery, and that was his own private business; that the room back of that was leased to the "Valley Social Club" by himself and wife for the term of one year from May 23, 1887.    He was steward of that club.    He said : " I have heard the witnesses sworn on the part of the people.    Heard them testify that they were members of the club, and procured drinks at that place.    That I do not deny in any way.    None of the drinks had by any of the witnesses was my property, nor did I receive any pay of my own therefor, whatever.    The liquors did not belong to me; they belonged to the men that drank them.    They were not bought in my name, but in the name of the Valley Social Club, and bills were rendered to that organization for them. The club was organized about June 1, 1887, with William D. Harris as president, and six trustees."    It further appeared that he was treasurer, and that all the moneys of the club came to his hands, and had done so since its formation. The club was not incorporated ; twenty or twenty-five men met together, and made the arrangements.    Others subsequently joined, so that the present number is five hundred. Andrews took the rent, and paid the wages of himself and Keeler.    This he said was in pursuance of a standing order of the officers of the club.    The matter of dividends has been considered by the club, and it was upon motion decided to use the money on hand to defend this suit, and make a dividend of what was left when the suit is ended.

The trial judge, in submitting the case to the jury, assumed that the liquors belonged to the club, and waiving the question as to the liability of the defendant for liquors sold or delivered to the members of the club, said, in substance, that "where any person, acting as agent or steward of such an association, does, upon request of a member, deliver to a person not a member liquors belonging to that association, and takes pay for it, although from that member, the transaction constitutes a sale within the meaning of the statute, and the offense charged in the indictment is complete." In that we find no error. The liquor belonged to the association, not a legal entity as a corporation, but as joint owners or tenants in common. I do not say that circumstance distinguishes this case from where the liquor is owned by an incorporated club; that need not be considered; it is the character in which they act. Five hundred men buy a quantity of liquor; they store it, and appoint an agent to manage it. On the application of one of the five hundred, the agent separates a small quantity from the mass of liquor, fixes its value, delivers the quantity so separated, as directed, and receives its value or price in money. What is that but a sale? It is not an evasion of the statute, it is a violation of it. We have before us the scheme of the association and its by-laws, and can see that the transaction was not in conformity to either. We are therefore not called upon to say whether, if it had been, it would or not have relieved the defendant. The scheme, as declared in the eighth by-law, is that "the expenses of this club shall be sustained by voluntary contributions to its funds by the members, and the refreshments furnished shall be enjoyed by the members in proportion to the amount contributed by each. Such contributions shall be receipted for by the treasurer by certificates; and, as a means of adjusting the expenses equitably between the members, such certificates shall be surrendered to the employees of the club as such refreshments are consumed by such members." In the case before us no certificates were

given, and none of course surrendered. Nothing was done by means of which the equities between the members could be adjusted. Nothing remained to be done. The transactions were on a cash basis. The purchasing money went went into the hands of the treasurer, with no other ceremony than attended a similar purchase, when, instead of filling that character, he stood behind the same bar as a saloon-keeper. Liquor was purchased; liquor was paid for by money. The occurrence was not exceptional, but the members were dealt with on a cash basis; and, whether men or boys, received no other consideration than is accorded to ready money customers at a public bar. Whatever may be the merit of the scheme prescribed by the organization, it has no effect here. It did not control or govern the parties.

We are referred to the case of Comm. v. Ewig, 145 *Mass.* 119, as an authority to sustain the defendant's appeal. In that case the defendant was convicted because the scheme on which he relied was deemed an evasion of the license law. We do not regard that question as before us, and, if there are observations in the course of the opinion of the learned court below at variance with those already expressed, we cannnot yield to them. We put our decision upon the sole ground that the acts of the defendant were as charged in the indictment, in violation of our law, and that upon the evidence he was rightfully convicted.

The judgment of the general term should therefore be reversed, the defendant's appeal dismissed, and the judgment of the Court of Sessions affirmed.

All concur.