CARL KOENIG v. THE STATE.

*No. 359. Decided May 19.*

1. **Indictment—Transfer from District to County Court—Variance.**—Where an indictment for "playing cards in a house for retailing spirituous liquors" was transferred from the District to the County Court, and the minutes of the District Court had recited the offense as "playing cards in a public place," *Held,* on motion in the County Court to quash for variance, that said motion was not maintainable, as the identity of the indictment was otherwise fully established by the names of the parties and the proper number of the bill.

2. **Same—Jurisdiction—Judicial Knowledge—Incorporated Towns and Cities and Justices Therein.**—Article 436 of the Code of Criminal Procedure, with reference to the transfer of criminal cases from the District to the Justice Court, provides, amongst other matters, that "if it appears to the judge that the offense has been committed in any incorporated town or city, the cause shall be transferred to a justice in said town or city, if there be one therein." *Held,* on plea to the jurisdiction, where the case had been transferred to the County Court, the district judge is not charged with judicial knowledge that the offense was committed in an incorporated town or city, that fact not being alleged in the indictment; nor that a city, if named, is incorporated; nor that a justice resided in said city.

3. **Same.**—Where the district judge transfers a cause to the County Court, and that court has jurisdiction to try the offense named, the jurisdiction of that court to try

the particular cause can not in any way be impeached.   Following Patterson v. The State, 12 Texas Crim. App., 222.

4.  **Disqualification of Judge.**—That the same question of law arises, or the same character of facts are involved in two prosecutions, does not disqualify a judge from sitting in one by reason of his having previously acted as prosecuting attorney in the other.

5.  **Playing Cards—Social Club Room Not a "Public House," nor "House for Retailing Spirituous Liquors," When.**—On a trial under an indictment for playing cards at a house for retailing spirituous liquors, where the evidence showed that said house was the club room or hall of "the German Turnverein," a private chartered corporation, and fitted up with the usual equipments of such halls, amongst which were card tables, for the pleasure, amusement, and free use of the members and their guests, and where spirituous, vinous and malt liquors were furnished without profit, to members only, the money paid for the same being turned into and used as a general fund to replenish the stock of liquors when needed, *Held*, such house or hall is not "a house for retailing spirituous liquors," nor a "public house," within the purview of article 355 of the Penal Code, which prohibits playing cards in such public house or place.

APPEAL from the County Court of De Witt.   Tried below before Hon. O. L. CROUCH, County Judge.

Appellant was indicted in the District Court of De Witt County, at the December Term, 1891, for unlawful playing at a game with cards, at a house for retailing spirituous liquors.   The entries upon the minutes of the District Court recited the offense as "playing cards in a public place."   On the 11th of January, 1892, the cause was transferred for trial from the District to the County Court of De Witt County.   In the County Court, at the March Term, 1892, defendant moved the court to quash the indictment, because "the certified copy of the proceedings taken in the District Court of De Witt County in this cause show that the defendant stands charged with playing cards in a public place, whereas the indictment upon which the State proposes to try defendant charges him with playing a game with cards at a house for retailing spirituous liquors."   Defendant also filed a plea to the jurisdiction of the County Court, in which, among other things, he alleged, that the law did not authorize the transfer of this cause from the District to the County Court, because said indictment so transferred charges defendant with a misdemeanor over which justices of the peace have jurisdiction, and that the said offense so charged in said indictment, if committed at all, was committed in an incorporated city, to wit, the city of Cuero, Texas, and that a justice of the peace resided, at the time of the transfer of said indictment, and at this time resides, in said city; that the defendant has had no opportunity to plead to this indictment in said District Court, and was not arrested until after the said indictment was so transferred.   Wherefore defendant prays that the said indictment be transferred by this court to the proper court for further proceedings.

Defendant also moved for a transfer of the cause to some other proper court for trial, on account of the disqualification of the county judge;

the motion being in substance and effect, that said county judge had theretofore, in his official capacity, when exercising the functions of his office of county attorney, prosecuted parties for offenses involving the same questions of law as are involved in this case.

These motions of the defendant to quash the indictment, and with regard to the disqualification of the judge, as well as his plea to the jurisdiction of the court, having each been overruled, defendant was put upon his trial, which resulted in his conviction, with the punishment assessed at a fine of $10.

The opinion sufficiently discloses the case as made by the evidence.

The court instructed the jury, in the second and third paragraphs of its charge, as follows: "2. The defendant in this case is charged by indictment with the offense of playing at a game with cards in a house for retailing spirituous liquors, and you are instructed, that if from the evidence you believe beyond a reasonable doubt that defendant did, as charged, play at any game with cards in any house for retailing spirituous liquors, you should convict him; and it makes no difference, under the law, whether the liquors were retailed in a private club room, in an open saloon, or in a private residence, and regardless of the persons to whom, or how, the spirituous liquors were sold, whether to members only or to the public generally.

"3. You are further instructed, that if you believe from the evidence beyond a reasonable doubt that the Cuero German Turnverein is an incorporated institution under the laws of the State of Texas, then and in that case, if so, it becomes an artificial person, and can own and hold and sell property as an individual; and if you further believe from the evidence beyond a reasonable doubt that said Cuero German Turnverein kept and dispensed spirituous liquors through an agent, janitor, or steward to individual persons, and that said liquors were paid for in money or charged to the individual when gotten, then and in that case the acts of the body corporate through its agent, janitor, or steward, and the individual, in dispensing and obtaining the liquor, constitute a sale and purchase under that case, regardless of whether the individual is a member of the incorporated body or not."

Defendant reserved a bill of exceptions to these two paragraphs of the charge, because they were upon the weight of evidence.

*Crain, Kleberg & Grimes,* for appellant.—1. When it is made to appear to the judge of a County Court that a misdemeanor case has been improvidently transferred from the District Court to said County Court, because said offense charged has been committed in an incorporated town or city, that there is a justice of the peace in said city, and that the defendant has never had an opportunity to object to said improvident transfer in the District Court, then it becomes the duty

of said county judge to retransfer said case to the proper court. Const., art. 5, sec. 16; Code Crim. Proc., art. 436. We respectfully submit that the case of Patterson v. The State, 12 Texas Criminal Appeals, 222, is not in point, because in that case it was not shown that the defendant had had no opportunity to plead in the District Court.

2. Defendant filed his motion setting forth the judge's disqualification in this, that the judge presiding in this cause had been county attorney in January, 1886, and as counsel for the State had filed a certain complaint, wherein he charged the officers of the said Cuero German Turnverein with unlawfully engaging in the business of selling spirituous liquors in quantities less than one quart. Const., art. 5, sec. 11; Code Crim. Proc., art. 569; Thompson v. The State, 9 Texas Crim. App., 649; Cock v. The State, 8 Texas Crim. App., 659; Johnson v. The State, 29 Texas Crim. App., 527.

The material question involved in the case at bar, is whether spirituous liquors were retailed in the club room of the Cuero German Turnverein. Unless such liquors were retailed at said room there could be no offense as charged in this indictment.

The question in the former prosecution, in which the presiding judge acted as State's counsel, was whether the officers of the Cuero German Turnverein, as such, followed the occupation of selling spirituous, vinous, or malt liquors in quantities less than one quart. The mode and manner of such sale being identical with the facts of such sale in the case at bar, we submit that the main issue in each case is identical, and that therefore the presiding judge was disqualified.

The court erred in overruling the defendant's motion to quash the transfer from the District Court and indictment in the cause. Donaldson v. The State, 15 Texas Crim. App., 30.

3. A social club that dispenses intoxicating liquors by the drink among its members only, and receives for such drink money with which to replenish the supply, no profit being made, is not retailing spirituous liquors in a legal sense, and a person playing at a game with cards in the club room of such club is not punishable, under articles 355 and 356 of the Penal Code, under a charge of playing cards at a house for retailing spirituous liquors. Stanford v. The State, 16 Texas Crim. App., 332; La Norris v. The State, 13 Texas Crim. App., 43; State ex rel. Columbia Club v. McMaster (South Carolina), 14 So. E. Rep., 291; 11 Am. and Eng. Encyc. of Law, title "Intoxicating Liquors," p. 727, and authorities there cited; Barden v. Montana Club (Montana), 25 Pac. Rep., 1042; Piedmont Club v. The Commonwealth (Virginia), 12 So. E. Rep., 963.

We respectfully submit that the term, "at a house for retailing spirituous liquors," as employed in articles 355 and 356, has reference to saloons, bar rooms, and such places where spirituous liquors are sold as a business for profit, and that it can not apply to the distribu-

tion of liquors among members of a bona fide club. The word "re-tailing" certainly implies a sale, and does not cover a mere division of liquors among its owners, or the mere act of tippling. Again, it implies not only numerous sales of liquor in small quantities, but that the same be carried on as a business in contradistinction to the sale of liquors by the wholesale. Liquors may be sold by the carload every hour in the day by our merchants, and a person charged with playing cards at such a house, unless he and others resort there for the purposes of gaming, could not be legally convicted under article 355; neither could he be convicted for playing at a game with cards at a house where liquors were occasionally sold in smaller quantities.

We conclude, then, that not until a house is used for the calling, business, or occupation of selling spirituous liquors in quantities less than a quart—that is, by the drink—can it be said in legal parlance, and under a broad view of the object of article 355, that it is a house for the retailing of spirituous liquors, and that the playing of a game at cards by any person at such a house is prohibited by law. But if, as held by the authorities quoted above, the distribution of liquors among the members of a social club, etc., is not a sale, then a priori there can be no retailing of such liquors.

This in fact was the construction of the learned judge who presided in the District Court upon the trial of members of this same club who were charged with following the occupation of selling liquors in quantities of less than one quart, without license, etc.

All the authorities against this doctrine are based on facts which evidence a purpose on the part of the persons charged, under the device and cover of a social club, to evade the law.

Such is not the fact with the case at bar. It is conceded that this is a bona fide chartered club, composed principally of our leading and best people; that the objects of the association are the encouragement of social and friendly intercourse among its members and their families, and for their mental, moral, and physical improvement, and that the members were faithfully carrying out these laudable objects.

*R. L. Henry*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—By indictment presented in the District Court, appellant was charged with playing cards at a house for retailing spirituous liquors. Before he was arrested the indictment was, by order of the district judge, transferred to the County Court. Appellant, having been arrested under process issuing from the County Court, was tried in that court and convicted. He moved to quash the the indictment, on the ground that the entry on the minutes of the District Court showed that he was charged with playing cards in a public place, while the offense named in the indictment itself is play-

ing a game with cards at a house for retailing spirituous liquors. The matter presents simply a question of identifying the indictment; and the names of the parties, and the proper number of the bill being stated, there was no error in refusing to quash.

By plea to the jurisdiction appellant urged, that as the offense was committed in the incorporated city of Cuero, and there was a justice of the peace in said city, the cause should have been transferred to such justice for trial, and that the County Court had no jurisdiction to try it; and in support of this contention he cites article 436, Code of Criminal Procedure. The decisions of this court settle this question. The district judge is not charged with judicial knowledge that the offense was committed in an incorporated town or city—that fact not being alleged in the indictment—nor that a city, if named, is incorporated, nor that a justice resided in such city. When the district judge has transferred the cause to the County Court, and that court has jurisdiction to try for the offense named, the jurisdiction of that court to try the particular cause can not in any way be impeached. Patterson v. The State, 12 Texas Crim. App., 222; Temple v. The State, 15 Texas Crim. App., 304

A question of the disqualification of the county judge to try this case was raised by proper plea. The contention is that he, while county attorney, filed a complaint against certain parties, charging them with pursuing the occupation of selling spirituous, vinous, and malt liquors without first obtaining a license; that this was in the same building in which the offense charged in this indictment was committed, the question material in both cases being whether liquor was retailed; that the facts are identical, and identically the same question arises in both cases. There was no error in overruling the plea. That the same question of law arises, or the same character of facts are involved, in two prosecutions, does not disqualify a judge from sitting in one by reason of his having been county attorney in the other.

A serious and much-vexed question arises on the facts and the charge of the court in this case. The facts are undisputed. Appellant played a game of cards in the club room of a building known as "Turner Hall," situated in Cuero, on the date named in the indictment. The building is occupied and controlled by the Cuero German Turnverein, a private corporation chartered under the general laws of the State. By the terms of its charter, the purposes of the association are expressed to be: "Mental, moral, and physical improvement of the stockholders, their families and others; to promote generally the diffusion of the knowledge of literature, the arts and sciences, and to encourage social and friendly intercourse." Under the by-laws members are elected by ballot. Members have a right, with their families, to visit the hall, take part in all festivities of the association, and introduce strangers as guests. The name and residence of a guest must be entered

on the guest book, with the name of the member introducing him, who will be held responsible for his good conduct. A person who has sojourned in Cuero thirty days can not be introduced as a guest unless he has made application for membership. The fee for membership is $10. In addition, an assessment of fifty cents per month from each member is levied to meet the expenses of the association and provide for the comfort and pleasure of the members. The employes in charge of the bar, or the messenger of the same, are positively forbidden to receive any money from others than members. The management of the hall, bar, and grounds is under the director elected for that purpose. The capital stock of the association is fixed at $4000, divided into $10 shares. Such are the purposes and management of the association, as exhibited by its charter and by-laws. The building we have mentioned consists of a large hall, a stage, and a club room in the basement. The hall is used for theatricals, private parties, dancing, conventions, and lectures. The best people of the community go there to listen and attend public and private dances and ice cream festivals. Hall rent is charged to professional troupes, and nominal rent to private parties. The theatricals and conventions and the hall rent are the chief income of the association. The club room contains all the fixtures and appliances of a first-class bar room—counter, glasses, ice-chest, billiard table, etc. A supply of spirituous, vinous, and malt liquors for the exclusive use of the members is kept, and sold only to members by the drink, by the steward, at five and ten cents per drink, which is either paid in money or charged to the member and collected at the end of the month. The money thus paid by members is paid by the steward into the general fund of the association, but is chiefly used in replenishing the stock of liquors. The bar is run at a loss, it not being the intention to run the bar for profit or to conduct the same as a business or calling, but simply for the convenience of members. The steward has strict instructions from the directors not to sell liquors to any stranger for any consideration. Such instructions are rigidly observed, but sometimes members buy liquor at the bar and take it away on a waiter, and the steward does not know what becomes of the liquor; and it may thus happen that at times strangers get liquors, but they do not buy or purchase them. The liquors are principally sold to members on Sunday, and at night on week days. More is sold on Sunday than on any other day. The billiard table is used only by members, and no fees are charged, and no betting thereon. Other tables are in the club room, and are used by members only for playing social games of cards, and no table fees are charged. The club room is also supplied with the papers, periodicals, and magazines of the day, and some members resort there to read and converse only. The room is orderly and quiet, and is visited by members, who are the leading and best people of Cuero. The windows of the building are stained,

and no one on the outside can see what is going on inside. The doors to the club room are generally closed during the performances or public meetings, and it is a private place, inasmuch as no stranger is admitted unless he lives outside the city and is introduced as a guest of a member, and then such stranger can not buy any liquor at the bar of the club. To the east of the building is a lawn, on which the association has a gymnasium. The lawn is often used for church fairs and festivals. During these festivals the doors of the club room are kept closed, and no one except a member has access to it. But the members do not stop playing cards in the club room while the festivals are going on. There are 75 or 100 members. The association pays no occupation tax or liquor tax, either to the State, county, or city, but does pay the United States revenue tax as liquor dealer. The liquors and bar fixtures are all the property of the association. The association has been conducted as above since 1879.

This is the uncontradicted testimony of the steward. The secretary of the association corroborated in every respect the testimony of the steward, and further testified, that the association was not organized to evade the license laws of the State. It is a social club, whose members may indulge in a social glass without resort to bar rooms. The liquors are not kept for the purpose of obtaining revenue, and the payments made by members are put into the general fund. The so-called "bar" is run at an absolute loss, the loss for the past year being about $500. The members carry out, in letter and spirit, the object of the corporation as stated in the charter.

These being the facts, the court charged the jury, that it "makes no difference, under the law, whether the liquors were retailed in a private club room, in an open saloon, or in a private residence, and regardless of the persons to whom or how the spirituous liquors were sold—whether to members only, or to the public generally." And again, "If you believe that the Cuero German Turnverein is an incorporated institution under the laws of this State, and in that case, if so, it becomes an artificial person, and can own and hold, buy and sell, property as individuals; and if you further believe * * * that such Turnverein kept and dispensed spirituous liquors, through an agent, janitor, or a steward, to individual persons, and that said liquors were paid for in money or charged to the individuals, then the acts of the body corporate, through its agent, janitor, or steward, and the individual, in dispensing and obtaining the liquors, constitute a sale and purchase under our law, regardless of whether the individual is a member of the incorporated body or not." The charge was excepted to, on the ground that it was erroneous in defining a house for retailing spirituous liquors. The effect of the court's charge was to tell the jury to convict appellant on the facts in evidence, and the question for us to determine is, do the acts show a violation of the stat-

ute? The playing at a game of cards being an admitted fact, the question is narrowed to this: Was the club room in question a house for retailing spirituous liquors within the meaning of article 355, Penal Code? That article reads: "If any person shall play at any game with cards at any house for retailing spirituous liquors, storehouse, tavern, inn, or any other public house, or in any street, highway, or other public place, * * * he shall be fined." * * * The next succeeding article is explanatory, and reads: "All houses commonly known as public, and all gaming houses, are included within the meaning of the preceding article. Any room attached to such public house and commonly used for gaming is also included, whether the same be kept closed or open. A private room of an inn or tavern is not within the meaning of public places, unless such room is commonly used for gaming; nor is a private business office or a private residence to be construed as within the meaning of the public house or place; provided, said private residence shall not be a house for retailing spirituous liquors."

We have no decision in Texas upon the question, nor do we find any decisions of other States directly in point. There is a line of decisions, however, which serves to illustrate and throw light upon the subject. In Maryland the statute (Laws 1866, chapter 66) provides, that "No person in this State shall sell, dispose of * * * any spirituous liquors * * * or beer * * * on the Sabbath day," * * * and a penalty was fixed. The officers of a corporation known as the Concordia were indicted for selling beer on Sunday. The purpose and management of the Concordia were in all respects the same as that of the Turnverein in this case. It was admitted that one Springer, a member, at the time and place alleged, called for a glass of beer in the usual way, was served by the steward, drank it then and there, and paid five cents therefor, that being the price fixed by the corporation. The Supreme Court of that State say: "We are all of the opinion that the transaction was not a sale of beer to Springer within the intent and meaning of the statute. * * * The act has no application to a case like the present." "The license laws which forbid the sale or barter of spirituous or fermented liquors without a license have never been construed as applicable to a social club. * * * We think it clear that no license is required, for the reason that such a transaction is not a sale within the meaning of the license laws. Such a transaction is not a barter or sale in the way of trade." Seim v. The State, 55 Md., 566.

In Massachusetts the defendant was charged with keeping and maintaining a common nuisance, to wit, "a tenement used for the illegal keeping and illegal sale of intoxicating liquors." The Supreme Court said: "If the liquors really belonged to the members of the club, and had been previously purchased by them or on their account of

some person other than the defendant, and if he merely kept the liquors for them, and to be divided among them according to a previously arranged system, these facts would not justify the jury in finding that he kept and maintained a nuisance within the meaning of the statute under which he is indicted. There would be neither selling nor keeping for sale." "If the whole arrangement was a mere evasion, and the substance of the transaction was a lending of money to the defendant, that he might buy intoxicating liquors to be afterwards sold and charged to the associates, or if he was authorized to sell, or did sell, or keep, any of the liquors, with the intent to sell to any persons not members of the club, he might well be convicted. This, however, would be a question not of law, but of fact." The Commonwealth v. Smith, 102 Mass., 147.

In the case of The Commonwealth v. Pomphret, the complaint was for keeping liquors with intent unlawfully to sell the same. The trial judge charged as follows: "If the association of persons, of whom defendant was one, owned a quantity of liquors, which they kept under an arrangement to furnish them in such quantities as might be required, to be drank on the premises, to such members of the association as should call for them, in return for checks which represented certain values, and which were obtained from the defendant, as a steward of the association, and were paid for, when obtained, at the price they purported to represent, and defendant was one of the persons keeping these liquors for said purpose, and was personally in charge of them, furnishing them in return for said checks, the jury may find that said liquors were kept by him for unlawful sale." The Supreme Court said: "One inquiry always is, whether the organization is bona fide a club with limited membership, into which admission can not be obtained by any person at his pleasure, and in which the property is actually owned in common. * * * Graff v. Evans, 8 Q. B., Div. 373, was decided on the ground that there was no transfer of a special interest, as all members of a club were owners in common, and that as the club was a bona fide club, the furnishing of liquors to a member was not a sale within the meaning of the English licensing act. * * * The ruling and instruction in this case seemed to us to assume that this was a bona fide club, that the liquors were owned in common by the members, that they were furnished only to members, and that they were kept by the defendant as one of the members and as steward of the association. It does not appear in the exceptions in what manner new members were admitted, except that they paid an admission fee of $1, but we can not assume that any person could join the association at his pleasure; and the ruling and the instructions are not put upon the ground that there was evidence that this was an association open to anybody at a price. On the assumptions upon which we understand the instructions to proceed, we think

that, under the decision in The Commonwealth v. Smith, it was not competent for the jury to find the defendant guilty." 137 Mass., 564.

In a later case in the same State, the instruction of the trial judge was to the effect that if the club was a bona fide club, and the liquors owned in common by the members, and the members, on receiving liquors, gave money in return, it would not be a sale within the meaning of the statute; but if this is a mere device to cheat the government out of its license fees, and prevent the due execution of the law, it is not a protection, and the defendant does not act with impunity. The Supreme Court held that the charge correctly presented the law. The Commonwealth v. Ewig, 145 Mass., 119.

In a case before the Supreme Court of New York, the principles enunciated in the foregoing cases were approved, and the cases, with many others to the same effect, were cited. However, in the case before the court, the facts did not bring it within the rule. The ball given by the club was not confined to the members, inasmuch as the tickets were sold to any one who would buy, and the liquors were indiscriminately sold to persons admitted, and desiring them. "The Academy of Music," said the court, "ceased to be a private club house for the period during which the ball continued. The entrance to which, and privileges therein, were not confined to its members and their guests in the proper and legal sense of that term." Circle Francais de L'Harmonie v. French, 44 Hun, 123.

In Virginia a statute (Acts 1889-90, p. 242, et seq.) provided, that "no person, corporation, company, firm, partnership, or association, shall, within the limits of this State, engage in the business, sell, or offer to sell, ardent spirits," without first having obtained a license. It was further provided, that "any person, club, or corporation desiring to carry on the business of a retail liquor merchant and also that of a bar room, shall obtain a separate license for each." The Piedmont Club was indicted for selling liquor without license. It was conceded that it was a bona fide club, organized for the purposes named in its charter, and not as a mere device resorted to as a means of evading the law. None but members or invited guests are entitled to the privileges of the club, and no person not a member is permitted to pay for either food or drink. The money received for the liquors goes into the general fund, which is again used to replenish the stock. No profit is made on the liquor. The Supreme Court said: "What is complained of as an unlawful selling is nothing more than an equitable mode by which the cost of the liquor used by members is divided among them in proportion to the quantity that each one uses. * * If there can be said to have been, in the strictest or most technical sense, a sale at all, it was not such a sale as the statute contemplates. The defendant club, in dispensing liquors to or at the expense of its members, was not engaged in carrying on the business of selling

liquor." Piedmont Club v. The Commonwealth, 12 So. E. Rep., 963. In a recent case the Supreme Court of South Carolina reviewed the above cases, and approved them. The State v. McMaster, 14 So. E. Rep., 290.

To the same effect are the cases of Tennessee Club v. Dwyer, 11 Lea, 452; Barden v. Montana Club, 25 Pacific Reporter, 1042. From these cases the principle is deducible that the distribution of liquors by a bona fide club among its members is not a sale, within the inhibition of a liquor law, even though the person receiving the liquor give money in return for it. It is otherwise, however, where such club is simply a device resorted to as a means of evading the statute. See McMaster's case, supra; Am. and Eng. Encyc. of Law, title, "Intoxicating Liquor."

The case of Rickart v. The People, 79 Illinois, 85, is often cited to support the converse of the above proposition. The facts there made a case totally dissimilar to those we have reviewed and the one at bar. The members did not own the liquors, although they claimed to own them. The money received went to the pretended treasurer, who rendered no account to the members. Any one could become a member by paying a dollar. The court correctly held that the jury were warranted in finding it a mere device to evade the law. The case does not conflict with those above. The case of Marmont v. The State, 48 Indiana, 21, directly conflicts with the cases we have reviewed. It was there distinctly held that the delivery by the club, through its agent, of beer, which was the common property of the society, to a member of the society, upon credit or for cash, and which thereby became the separate property of the member, was a sale, within the meaning of the statute of that State. So, in Alabama, it was held that such a transaction was a sale. Martin v. The State, 59 Ala., 34. To the same effect seems the opinion in the case of Chesapeake Club v. The State, 63 Maryland, 446, by Alvey, C. J., and Judges Stone and Irving concurring. In the same case, however, Judge Bryan delivered an opinion, concurred in by Judges Yellott and Robinson, reasserting the doctrine in Seim v. The State, supra, and holding, that "if, in this case, the whisky and beer which the appellant was charged with keeping was kept for the purpose of furnishing to its members under the circumstances above stated, there would be no violation of the statute." The statute referred to prohibited any person, company, or corporation or association from depositing, or having in possession, any liquors, with intent to sell the same, or give away the same. The local option law was in force where the offense was alleged to have been committed. The circumstances of the transaction in question were not unlike the one before this court in any essential particular.

We are of the opinion that, upon authority and reason, it must be held, under the facts of the present case, the transaction was not a sale of the liquor in the way of trade, and that neither the association, its

members, nor its steward were engaged in the occupation of selling liquors. If this be true, was the club room a place for retailing liquors? "To retail," in this connection must mean "to sell in small quantities." "A house for retailing" must mean "a house where the liquors are sold in small quantities in the way of trade." Again, our statutes regulating the sale of spirituous liquors recognize the distinction between selling liquors at retail and otherwise as an occupation. It is very clear, both from the decisions we have cited and our statutes, that the club, its members, or steward, are not engaged in the occupation of selling liquors in quantities less than one quart. In the case made by the facts, it is equally clear that no question of evasion of the laws, or of a device to conceal the real objects, purposes, and acts of the association, arises in this case. The dispensing of liquors to the members is but incidental, and for the purpose of adding to the pleasure and comfort of the members. Again, reference to the statutes shows that the places and houses named, and those intended to be embraced, are all "public." The statute contemplates public houses and public places. Was the club room of the association either? None but members and their guests could enter there or share its privileges. So long as this rule was enforced it was not public, and the evidence shows that the rule was strictly observed. We conclude that the evidence does not show that defendant played cards at a house for retailing spirituous liquors, within the meaning of the statute.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.