(17 Misc. Rep. 11.)

PEOPLE ex rel. ROCHESTER WHIST CLUB v. HAMILTON, County Treasurer.

(Supreme Court, Special Term, Monroe County. May, 1896.)

INTOXICATING LIQUORS—RIGHT OF CLUB TO SUPPLY MEMBERS.

　　Laws 1896, c. 112 (Liquor Tax Law), § 31, which forbids the carrying on of the business of "trafficking" in liquors without a liquor tax certificate, does not apply to a social club which dispenses liquor to its members at prices fixed by the house committee; the fund so realized being used, together with the annual dues and initiation fees, in paying for the liquors so used by its members, and in defraying the general expenses of the club.

Certiorari by the Rochester Whist Club to review the decision of John B. Hamilton, treasurer of the county of Monroe, in refusing to issue to relator a liquor tax certificate. Quashed.

Frank M. Bottum and John A. Barhite, for relator.

George D. Forsyth, Dist. Atty., and Charles E. Bostwick, for defendant.

DAVY, J.   This is a proceeding by certiorari to review the decision of the county treasurer of Monroe county in refusing to issue to the relator a liquor tax certificate as provided in chapter 112 of the Laws of 1896, commonly known as the "Raines Liquor Tax Law."   The reasons stated in the return for refusing the certificate are that the relator is a corporation organized to promote social intercourse among its members, and to provide them with the conveniences of a clubhouse, and that it cannot engage in the business of trafficking in liquors.   It is hardly necessary, in this case, to discuss the discretionary power that is vested in the county treasurer, under the statute, to grant or refuse a liquor-tax certificate.   I am inclined to think, however, that if any person who applies for such a certificate brings himself squarely within the terms of the law, by complying with all the statutory preliminaries, the certificate cannot legally be withheld; but as these proceedings are instituted in a friendly manner, and for the purpose of obtaining a judicial construction of the statute pertaining to the relator's legal right to dispense liquors to its members, the only question, therefore, which I deem it necessary to consider upon this application, is whether the relator is required, under the provisions of said act, to take out a liquor-tax license.   It is conceded that the relator is a bona fide club, and was duly incorporated on the 10th day of January, 1884; having among its objects the promotion of social enjoyment and recreation among its members, such as the practice and cultivation of the game of whist, and other innocent amusements.   The organization has followed the familiar rule of adopting a constitution and by-laws, which set forth the object of the society, and the qualifications for membership, and the number and character of its officers.   These, together with its charter, constitute its fundamental law, and are the source and limit of its authority to transact business.   The relator rents and furnishes a large house, which is located at No. 40 North Fitzhugh street, which contains parlors, a reading room, billiard and card rooms, a dining room, kitchen, and store room, and a room in which liquors and cigars are kept and dispensed to the members of the club only, upon their oral or written request, at a price fixed therefor by the house committee, for which the members ordering the same may pay cash, or have it charged, and pay therefor monthly.   This fund, together with the annual dues and initiation fees, are used in paying for the liquors and other supplies, which are consumed by its members, and in defraying the general expenses of the club.   The membership of the club is limited, and consists of resident and nonresident members, and no person can be admitted as a member unless he is 21 years of age, and his name has been proposed by two members of the society who are in good and regular standing.   The rules also require that his name, with the names of those who proposed him for membership, shall be posted upon the bulletin board of the club for at least two weeks before he can be elected.   At the election, two negative votes or black balls are sufficient to exclude any candidate.   Members are divided into two classes,—resident and nonresident.   The initia-

tion fees are $20 for resident members, and $10 for nonresident members; and the annual dues are $32 per year for resident members, and $10 per year for nonresident members.    The constitution also provides that each member shall have the right to entertain a friend, not residing in the city of Rochester, to the privileges of the club, for the space of two weeks, upon recording the name and residence of such friend in the visitors' book, together with his own, and producing from an officer of the club a card of invitation.    A member at whose request an invitation is given to a guest is held responsible to the club for all obligations of such guest.    The clubhouse is open to its members at all times, but no games of any kind are permitted to be played on Sunday or any other time for money.    Many of its members make the clubhouse their home, except for lodging; and they spend much of their time, when not engaged in business, in its parlors and reading room, and in playing and enjoying the familiar game known as "whist."    The committee having the management of the organization usually orders, from time to time, such quantities of provisions and liquors as will meet the demand of the individual members of the club.    The food is served in the dining room, and the liquors are dispensed to its members by its steward and other servants at prices fixed by the officers of the club.    The prices for liquors are intended to cover the actual cost of the articles furnished, and the expenses incurred in serving them.    The money so received is paid into the treasury, and is again used for replenishing the stock, which are in like manner dispensed to the members.    It is evident that, if the members only paid into the treasury the cost price of the liquors, there would be no fund to pay the servants and other outlays necessarily incurred in dispensing them, and the deficiency would have to be made good out of the funds received from initiation fees and annual dues.    The plan adopted is a simple method of assessing each member the cost price of the liquors he consumes, and in addition thereto a sufficient sum to pay the expenses incurred in serving them.    The relator has pursued this method of supplying liquors and refreshments to its members ever since its organization, and its right seems never to have been questioned or challenged before.

Black, in his work on Intoxicating Liquors, says:

"Whether or not a social club, such as are very common in all large cities, may lawfully furnish liquors to its members, as a part of the entertainment which it provides for them, without procuring a license or paying a tax as a retailer, is a question which has provoked great discussion of late years, and upon which the authorities are by no means harmonious."

After referring to the authorities in the different states upon the subject, he reaches the conclusion that the intent must govern, and that if the organization is a bona fide club—

"And conducted in good faith, with a limited and selected membership, really owning its property in common, and formed for social, literary, artistic, or other purposes, to which the furnishing of liquors to its members would be merely incidental, in the same way and to the same extent that the supplying of dinners or daily papers might be, then it cannot be considered within either the purpose or letter of the law."

Notwithstanding the conflict of authorities in other states upon the subject, I think that the question is no longer a doubtful one in this state.    The recent decision of the court of appeals in the case of People v. Adelphi Club, 149 N. Y. 5, 43 N. E. 410, holds that a bona fide social club, regularly organized, under the statute, for legitimate purposes, to which the furnishing of liquors to its members is merely incidental, and having a limited and selected membership, does not constitute a sale, within the meaning of the excise act of 1892.    Nothing can be said that will throw any additional light upon the question under consideration than what is stated in the very interesting and exhaustive opinion of Judge .Haight in the Adelphi Club Case, supra.    The learned district attorney contends, however, that the recent statute of 1896 is much more comprehensive and stringent in its terms than the act of 1892, and was intended to include social clubs within its provisions, and therefore the decision of the court of appeals in the Adelphi Club Case is not controlling in this proceeding.    The legislature, in the act of 1896, has prohibited all persons, corporations, associations, and co-partners from engaging in the business of trafficking in liquors except as authorized in said act, but it has not undertaken to prohibit the drinking or buying of liquor, or the distribution of it in severalty among persons who own it in common.    The question then arises whether the regulations adopted by the whist club for dispensing liquors among its own members constitute the business of trafficking in liquors, within the meaning of section 31 of the act of 1896, which makes it unlawful to carry on the business without a tax license.    A corporation, being a mere creature of the law, can exercise no power or authority except such as is conferred or authorized by its charter. This principle has been so often applied in the construction of corporate powers that I do not deem it necessary to refer to authorities.    The relator's charter and its by-laws are the measure of its powers.    It can engage in no enterprise or business beyond the purpose and object of its charter.    If liquors and cigars are furnished to its members, it is merely incidental to the business for which it was incorporated.    No one would entertain the idea for a moment that the relator could engage in the business of banking, or the business of manufacturing articles of merchandise; and yet it would have just as much power and authority, under its charter, to engage in either of these enterprises, as it would to throw open its doors to the public, and engage in the business of trafficking in liquors.    Clubs are now, and have been for years, an important feature of social life in all large cities.    Many of them occupy buildings of their own, which contain reading rooms, library, smoking rooms, and restaurant, baths, and even bedrooms, They are usually organized to meet for social intercourse, and the promotion of literature and science.    They are always open to the members, the same as a man's dwelling house is open to the members of his family.    It is well known that liquors are dispensed to their own limited and selected members, and that they never have been required, in this state, to take out a license.    If the

legislature intended that these well-known organizations should take out licenses to sell liquors exclusively to their members, it is singular that the statute should contain no provision for the issuing of liquor tax certificates to them.    The fact that clubs are not mentioned in the act has an important bearing upon the meaning to be placed upon the statute in reference to taxing such organizations.    The intention of the legislature upon this point must be ascertained from the context of the act.    It is a familiar rule that, when the language of an act of the legislature is plain and without ambiguity, the act construes itself, and courts will presume that the legislature intended what is plainly expressed therein.    Section 31 provides that it shall not be lawful for any corporation, association, co-partnership, or person who has not paid a tax as provided in section 11 of this act, and obtained and posted a liquor tax certificate, to sell, offer, or expose for sale, or give away, liquor in any quantities less than five wine gallons at a time, and, without having paid such tax and complied with the provisions of this act, to sell, offer, or expose for sale, or give away, on the premises of such vendor, or in any building, booth, yard, or garden appertaining thereto or connected therewith.    It also provides that it shall not be lawful for any corporation, association, co-partnership, or person, whether they have paid such tax or not, to sell, offer, or expose for sale, or give away, any liquor on Sunday, or before 5 a. m. on Monday, or on any other day between 1 o'clock and 5 o'clock in the morning.    Section 11 provides that the excise tax upon the business of trafficking in liquors shall be of four grades:    First, upon the business of trafficking in liquors to be drunk upon the premises where sold, or which are so drunk, whether in an hotel, restaurant, outbuilding, yard, or garden appertaining thereto or connected therewith; second, upon the business of trafficking in liquors in quantities of less than five wine gallons, no part of which shall be drunk upon the premises where sold, or in any outbuilding, yard, booth, or garden appertaining thereto or connected therewith; third, upon the business of trafficking in liquors by a duly-licensed pharmacist, which liquors can only be sold upon the written prescription of a regularly licensed physician, signed by such physician; fourth, upon the business of trafficking in liquors upon any car, steamboat, or vessel, to be drunk on such car, or any car connected therewith, or any such steamboat or vessel, or upon any barge attached thereto or connected therewith.    It seems to me that these requirements are inconsistent with the idea that the legislature intended that a social club, whose doors are closed to everybody except its members, should take out a liquor tax to traffic in liquors exclusively with its own members.    The act, in my judgment, is not intended to apply to a business conducted in a private manner, and in a place to which the public could not have free access.    It was conceded upon the argument, by the learned counsel for the defendant, that the question whether social clubs were required to pay a tax would depend largely upon the construction which the court would give to the words "trafficking in liquors."    It is generally

understood that a trafficker is one who is engaged in a particular branch of business or trade, like a merchant who buys and sells goods for a profit. Can it be said that this club, which deals solely with its members, could barter and carry on a traffic in the sale of liquor for a profit, when every dollar paid for liquors would go into the treasury, and become the joint property of its members? The question of sale or traffic in liquors depends upon the character of the act. In Graff v. Evans, 8 Q. B. Div. 373, Field, J., says that a sale involves the elements of a bargain. There must be a buyer and a seller, to make a sale of merchandise. The liquors of the club being the common property of its members, they cannot sell it to themselves. There could be no bargain and sale between them, because the money which is paid into the treasury by the men who consume the liquors remains the joint property of all its members. Such a system, it seems to me, lacks the very elements of a bargain and sale. It could not be seriously contended that the members of a family, who unite in purchasing a quantity of liquor for their own consumption, would violate the statute which prohibits the trafficking in liquors without a tax license. The statute nowhere prohibits the buying and drinking of liquors. The individual who sells it is the one who trafficks in the article, and not the consumer. The club does not sell, or keep for sale, any liquors. It keeps on hand liquors which are the common property of its members, to be distributed among them when called for. While the club, as a corporation, may be held liable for the liquors and provisions ordered by its committee for its members, yet that fact does not establish that it is engaged in the traffic or sale of those articles. In the case of People v. Adelphi Club, supra, Judge Haight says:

"Whilst property and supplies are technically owned by a club, each member is, in equity, an equal owner in common. The fact that a payment was made does not change the character of the act, for it was but a means adopted by which each member could receive his own, and not that of his fellow members. The payment went into the treasury ultimately to restore that which he had taken."

I am unable to discover any distinction between the excise act of 1892 and the liquor tax act of 1896, so far as it relates to social clubs. The act of 1892 prohibits persons from selling liquors without a license. The act of 1896 prohibits persons, corporations, associations, and co-partners from carrying on the business of trafficking in liquors without a liquor tax license. The word "sales," in the act of 1892, and the word "trafficking," in the act of 1896, are words of like significance in their meaning. Section 2 of the act under consideration defines the meaning of the words "trafficking in liquors." It provides that the sale of liquor in quantities of less than five gallons shall be "trafficking in liquors." We have therefore a well-defined meaning of the words "trafficking in liquors," in the act itself, and it is plain to be seen that it is not aimed at social clubs, but at those who sell liquors for a profit, in places of public resort. "Sale by retail" means sale to any member of the general public who may come to buy, and the proprie-

tor of a licensed house has no option to refuse to admit the public to his premises during the hours and days he is legally permitted to sell liquors. This club, therefore, being limited in its members, and not a place of public resort, could not be licensed to sell liquors. In support of this contention, it will be seen that section 18 of the act provides that every applicant for a liquor tax license is required to give a bond that he will not keep a disorderly house, or permit gambling upon the premises. This provision of the statute, when taken in connection with section 21, which requires the applicant, before commencing business, to post up his liquor tax certificate in a conspicuous place where the traffic in liquors is carried on, so that all persons visiting such place may readily see the same, and if there be a window facing the street, on the same floor where such business is carried on, such certificate must be displayed from the window, so that it may be readily seen from the street, indicates that the legislature intended that the business of trafficking in liquors, and the places where such trafficking is carried on, should be open to the public, and that all persons should have free access to the same, and that persons who are opposed to entering restaurants and places of amusements where intoxicating liquors are sold should have notice, by the posting of such tax certificate in the window, that the business of trafficking in liquors is carried on within. The relator's club-house cannot be turned into a place of public resort without forfeiting its charter. If it were required to take out a liquor tax license, it would be compelled to keep its clubhouse open to the public, and, during the hours when the sale of liquors is prohibited, to have no curtains upon its windows, screens or blinds, opaque or colored glass, that would obstruct the view, from the sidewalk, of the place where liquors are sold or kept for sale, so that the public could have full view of what transpired within. I am constrained, therefore, from the language of the act, to adopt the view that the relator's manner of furnishing liquors to its members does not constitute a sale, or the business of trafficking in liquors, within the meaning of the liquor tax law of 1896, c. 112. Having reached this conclusion, the application to compel the county treasurer to issue a liquor tax certificate to the relator must be denied, and the writ of certiorari quashed, but without costs.