Columbia County Court, July, 1896.   Unreported.

THE PEOPLE ex rel. JAMES HARTIGAN, v. GEORGE H. MACY, County
Treasurer of the County of Columbia.

CERTIORARI to compel county treasurer to issue liquor tax
certificate.

A. B. Gardenier, for relator.

Mark Duntz, District-Attorney, for defendant.

LONGLEY, Co. J.   The relator, a hotel-keeper within the county
of Columbia, on the 1st day of May, 1896, applied to the de-
fendant, as county treasurer of said county, for a liquor tax
certificate.  The application was refused by the county treasurer,
and the relator obtained a writ of certiorari, under section 28
of chapter 112 of the Laws of 1896.

It is conceded by the return to the writ and by the district-
attorney, appearing for the defendant upon this hearing, that the
relator's application in form met all statutory requirements; that
the bond which he filed with his application was a proper bond
and was approved as to form and sufficiency by the county
treasurer; that the relator, at the time he filed his application,
paid the proper tax required by law.   But the county treasurer
in his return states that the reason why he refused to issue a
tax certificate to the relator was because the place where the
relator proposed to carry on the liquor traffic was less than half
a mile from the county poorhouse, and says that he believed such
was the fact notwithstanding the applicant's sworn statement to
the contrary contained in the application; because, as he says,
of his own knowledge of the locality and of information obtained
by him after the application was made.

If, in fact, the relator's proposed place of business was less
than half a mile from the county poorhouse and situated in a
town and outside the limits of an incorporated village or city,
he was not under section 21 of said act, legally entitled to receive
the certificate for which he applied, and if that fact was properly
and legally made to appear to the county treasurer at the proper
time, that officer refused the application for a good and valid

reason and upon a return sufficiently showing the facts, his action should be sustained.

It is to be noticed that the reasons assigned by the county treasurer for his refusal to issue a certificate attached by him to the application and certified in his return to this writ, are defective in not stating that the proposed place of business, if within half a mile of the proposed poorhouse, is outside of a city or an incorporated village.

But the real question with which I.am confronted is this: Has the county treasurer any judicial or discretionary power which authorizes him to refuse to grant a certificate in a case where the preliminary statutory requirements have been complied with?

It seems to me that the scheme of the statute discloses no purpose on the part of the legislature to clothe county treasurers in this matter with other than ministerial powers. If it was the design of the framers and makers of this law to vest in county treasurers judicial functions, giving them the power to determine on evidence whether or not the applicant for a liquor tax certificate was on the true facts of the case entitled to receive such certificate, the language of the act is singularly inapt and inadequate; inapt — because the statute in terms expressly pro- vides that the county treasurer shall examine the application and bond to see if they are "correct in form" (§ 18); in- adequate — because no provision is made for taking evidence or hearing proofs, but, on the contrary, on payment of the tax, if the application and bond are found correct in form and the sureties on the bond are approved by the county treasurer, he is "at once to prepare and issue" the tax certificate (§ 19). No provision is made in the statute whereby the allegations of the application may be supported by the applicant by either affidavits or witnesses. He has no notice that the truth of his statements is challenged. He has no hearing after his application is filed, and not only is there no provision in the law by which county treasurers may investigate the truth or falsity of the applicant's answers to the statutory questions contained in the printed form for applications, but no provision is made for the court to receive evidence by affidavits or otherwise upon the return to the writ. These omissions are emphasized in importance by the fact that in a case where the county treasurer grants the certificate any citizen may bring his action up for review and ask "for an order revoking and cancelling such certificate, upon the ground that

material statements in the application of the holder of such certificate were false"; when the whole case is open upon the merits for trial before the referee or court upon proofs to be presented.

If county treasurers may simply assign a statutory reason for refusing to issue a certificate, without any investigation to ascertain whether such reason in fact exists, and against the sworn statement of the applicant, it must be confessed that the statute is well calculated to make the issuing of a certificate a mere matter of favoritism.

But a careful examination of the statute in my mind makes clear an altogether different purpose. I think the legislature intended not to create a judicial tribunal out of the office of county treasurer, but in the administration of this law to keep county treasurers as far as possible within their normal and legitimate functions as simple receivers of taxes.

I think that the necessary facts to entitle an applicant to receive a tax certificate are to be presented to the county treasurer by the sworn statement of the applicant contained in his answers to the statutory questions in the printed form of application; that the county treasurer is required, before issuing a certificate, to examine the application and see that the statements necessary to make out a case for a certificate to issue are all there and formally and correctly made, and that when he finds the application correct in form and receives from the applicant a sufficient bond, together with the amount of tax required, he has then no alternative but to obey the explicit command of the statute and "at once" — without waiting for or receiving any further or subsequent information — issue his certificate.

If I am right in the view I take of the statute, the county treasurer in this case should have obtained no information, as he says he did, "subsequent" to receiving the application; he should have acted immediately. Neither was he at liberty to act upon his own knowledge of the locality. He had no discretionary or judicial powers in the premises. It was his duty to examine the papers presented and if he found that these were correct in form, and if he approved the bond, then all the preliminary statutory requirements had been complied with and he had only the simply ministerial duty to perform of receiving the tax and issuing his certificate.

My confidence in the correctness of the views here expressed is

very much strengthened by a remark made by Mr. Justice Davy, of the Supreme Court, in deciding at Special Term, the case of People ex rel. Rochester Whist Club *v.* Hamilton, 17 Misc. Rep. 11. In the opinion, at page 12, he says: "It is hardly necessary in this case to discuss the discretionary power that is vested in the county treasurer, under the statute, to grant or refuse a liquor tax certificate. I am inclined to think, however, that if any person applies for such a certificate and brings himself squarely within the terms of the law by complying with all the statutory preliminaries, that the certificate cannot legally be withheld."

The conclusion I have reached requires that the application to compel the county treasurer to issue a liquor tax certificate to the relator must be granted.