## PEOPLE v. BRADLEY.

(*Supreme Court, General Term, Fifth Department.* October 23, 1890.)

1. INTOXICATING LIQUORS—SALE TO MEMBERS OF CLUB.

A social club provided refreshment for its members and friends, the members purchasing tickets therefor, which would be punched as used. Under this arrangement, defendant, as steward of the club, furnished lager-beer in pint bottles to one of the members. *Held,* that he was properly convicted under Laws N. Y. 1857, c. 628, § 13, prohibiting the sale of liquors in quantities less than five gallons at a time, without a license therefor, and that it was immaterial whether the liquor was paid for at the time, whether credit was given, or whether the charge was indicated by punching the tickets.

2. SAME.

Whether the sale was made to citizens or aliens, residents or non-residents, was immaterial.

3. SAME—EVIDENCE.

In the absence of a license of any sort, proof of sale in quantities less than five gallons established the offense, and the fact that the beer was drank upon the premises did not make the offense one under section 14 of the act punishing any person who shall sell, or permit to be sold, any strong or spirituous liquors to be drank in his house, shop, etc., without having obtained a license as an inn, tavern, or hotel keeper.

4. SAME—INDICTMENT.

Where a case proceeds to trial without preliminary objection, the knowledge of the grand jury of the names of persons to whom the liquor was sold, stated in the indictment to be unknown, is of no importance.

Appeal from court of sessions, Alleghany county.

Defendant, Harry Bradley, appeals from his conviction for a violation of the excise laws.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Rufus Scott,* for appellant. *Charles H. Brown,* for the People.

CORLETT, J. About the 15th day of August, 1889, the Bolivar Lotus Club was incorporated. Section 2 provides: "The particular business and object of the society or club shall be to equip and maintain suitable quarters, rooms, and apartments; furnish the same with proper furniture, periodicals, and athletic paraphernalia, for the purpose of social intercourse, literary entertainments, and enjoyment, and for the mutual benefit of the members thereof; and the place for conducting its business is to be in the village of Bolivar, Alleghany county, N. Y." About the times hereinafter mentioned, the club contained about 190 members. As an incident to the club, an arrangement was made by which a member could buy a ticket for one dollar, the value of which he would receive in refreshments in the shape of sandwiches, beer, whisky, or cigars, as he might order. If he wished drinks at the rate of 10 cents each, or 5 cents each, a hole would be punched in the ticket which would diminish its value to that extent, and if he took a friend with him, even though he was not a member, the friend's drinks would also be punched, the rule being to the effect that a friend could not be treated who lived more than a mile outside the village. About 35 of the club indulged in no drinks. The evidence tends to show that the balance did. The defendant, Bradley, was a member of the club, and one of the stewards of this refreshment organization, and it was one of his duties to administer to the wants of members who came there and called for drinks or other refreshments, and to punch, or cause to be punched, holes to indicate the extent the dollars had been encroached

upon. The stock of supplies would ordinarily be purchased in bulk, and, when obtained, would be disposed of as above indicated. On the 25th day of December, 1889, the testimony tends to show one Harter, a member of the club, who had paid a dollar for refreshments, went there in company with some others, and asked the defendant, Bradley, to furnish them with lager-beer, which he did. They drank it, and left. None of them saw the ticket punched, but it was a part of Bradley's business to keep track of it, so as to keep the accounts square, and have the ends meet. There is no question but that all the gentlemen belonging to the club, including the refreshment branch of it, were reputable and respectable, who did not intend to violate any statute, or commit any criminal offense. The refreshment branch of the institution was an incident invented to increase the convenience and comfort of the club. It would sometimes so happen that a member would obtain credit or run in debt to the extent of two or three dollars, and then pay up; but ordinarily the practice was to exact a dollar for a ticket, and allow a member to get supplies on it until its exhaustion, when, if he wished, he could purchase another. On the 9th day of January, 1890, the grand jury of Alleghany county indicted the defendant and another for selling strong and spirituous liquors and wines in quantities less than five gallons without a license. The charging part is as follows: "That the said Harry Bradley and William Hogan did, on the 25th day of December, 1889, at the town of Bolivar, in the county of Alleghany, aforesaid, unlawfully, willfully, and maliciously sell and cause, suffer, and permit to be sold, strong and spirituous liquors and wines in quantities less than five gallons at a time, by retail, to F. B. Harter, and to divers other citizens of this state, and to divers persons to the jury aforesaid unknown, and did then and there unlawfully deliver, and cause the same to be delivered, in pursuance of such sale, to said F. B. Harter, and to divers other citizens of this state, and to divers persons to the jury aforesaid unknown, said strong and spirituous liquors and wines, to-wit, one pint of brandy, one pint of rum, one pint of gin, one pint of whisky, one pint of cordial, one pint of bitters, one pint of strong beer, one pint of lager-beer, without having a license therefor, or being authorized to do so by law," according to the form of the statute, etc. It was conceded on the trial that the lager-beer delivered and drank on the 25th day of December was intoxicating. Bradley and Hogan kept billiard rooms on the first floor of the building in which the Lotus Club rooms were. The evidence tended to show that the beer drank at the time above stated was kept in bottles in a vault, and there was some evidence to the effect that they were pint bottles. The evidence tended to show that a sale was made on the occasion in question, and by the defendant. It is entirely immaterial whether the value of the liquor was paid for at the time, whether credit was given, or whether the charge would be indicated by punching holes in the ticket. The practical result would be the same. If any intention had existed to evade the law by any subterfuge, the scheme unfolded by the evidence would be a transparent evasion. The question as to whether the defendant had an interest in the liquor, or was a mere agent delivering and keeping account for the benefit of other people, is of no importance. *People* v. *Andrews*, 115 N. Y. 427–433, 22 N. E. Rep. 358. The moment he furnished the beer to be drank, to be paid for in some form by one or more of those receiving it, the offense would be complete. An omission of that kind on the part of the person delivering the property would not change the nature of the transaction. A violation of the statute is an offense, even though it was the opinion of the person delivering the liquor that no law was violated.

Section 13 of chapter 628 of the Laws of 1857 is as follows: "Whoever shall sell any strong or spirituous liquors or wines in quantities less than five gallons at a time, without having a license therefor, granted as herein provided, shall forfeit fifty dollars for each offense." Section 14 is: "Whoever shall

sell any strong or spirituous liquors or wines to be drank in his house or shop, or any outhouse, yard, or garden appertaining thereto, or shall suffer or permit any such liquors or wines sold by him, or under his direction or authority, to be drank in his house or shop, or in any outhouse, yard, or garden thereto belonging, without having obtained a license therefor as an inn, tavern, or hotel keeper, shall forfeit fifty dollars for each offense." A sale contrary to the provisions of the above sections is made a misdemeanor. It will be observed that no importance is attached to the persons to whom the sales are made, whether to citizens or aliens, residents or non-residents. That is unimportant and immaterial. The moment the sale is made to any one in quantities less than five gallons, the offense under section 13 is complete; so that the sale of this beer by this defendant was a violation of that section, if the quantity did not exceed five gallons. It is very clear from the evidence that such was not the case, for it was furnished in pint bottles, and there is no color for the claim that the whole amount consumed on the occasion referred to amounted to anything like five gallons. But it is said that, the moment it appeared that the sale was made to be drank upon the premises, it was not a violation of section 13, but of 14. A moment's consideration will show that this claim is without foundation. Under the excise law above referred to, a store-keeper could sell, but not to be drank upon the premises, and, where it appeared that one had a store-keeper's license and sold liquors, no offense would be proved, nor could any conviction be had unless the indictment alleged not only a sale, but also that the liquors were to be drank upon the premises; and the people's case would fail as soon as the defendant proved a store-keeper's license, unless the indictment alleged and the proof showed that the liquor was to be drank upon the premises. This is illustrated in *People* v. *Buffum*, 27 Hun, 216, and *Huffstater* v. *People*, 5 Hun, 23. But in the absence of a license of any sort, as was the case here, proof of sale in quantities less than five gallons established the offense; and the fact that it appeared that the beer was drank upon the premises is entirely immaterial. It devolved on the defendant to prove license. 1 Archb. Crim. Pr. 360; *Potter* v. *Deyo*, 19 Wend. 361; *Jefferson* v. *People*, 101 N. Y. 19, 3 N. E. Rep. 797; *Smith* v. *Joyce*, 12 Barb. 26. Section 338 of the Code of Criminal Procedure does not change the rule. The indictment therefore alleged an offense, complete within both sections. *People* v. *Charbineau*, 115 N. Y. 437, 22 N. E. Rep. 271. But it is said by the learned counsel for the appellant that the indictment was false in alleging that the sales were to citizens and persons unknown, when in fact they were known. It is not seen how this is important. The offense is not made to depend upon any such question. If the indictment in the above respects was false, and the defendant might be prejudiced or misled, it may be that a motion might have been made to quash the indictment; but when, without preliminary objection, the case proceeds to trial, the knowledge of the grand jury is of no importance. It is also urged on the part of the learned counsel for the appellant that there was no proof of citizenship. If that fact were an element in the definition of the offense, or at all material, it would need to be proved as well as alleged; but, as already stated, the offense was complete upon the proving a sale without showing that the purchaser was a citizen or alien. This is entirely unlike that class of cases which are to the effect that where the indictment alleges the stealing of a white heifer, and the proof shows it was a black one, there could be no conviction. That would be a case of a fatal variance. In the case at bar there was no variance. An offense was shown, and the allegations not proved were entirely immaterial. This was always the rule. In Barbour's Criminal Law (pages 278, 279) it is thus stated: "Every fact and circumstance which is not a necessary ingredient of the offense may be rejected as surplusage, and need not be proved at the trial." So here, although a sale to citizens is alleged, it is entirely immaterial whether the purchaser was a citizen.

or not. The learned counsel for the appellant in his exhaustive brief and able argument fails to show any substantial reasons for reversal. A careful examination of all the evidence, and the charge of the learned judge presiding at the trial, fails to show any errors prejudicial to the defendant. The question of the moral turpitude of the defendant, or the extent of punishment which he deserves, is with the trial court. The conviction must be affirmed. All concur.