## Court of Appeals.

### April 7, 1896.

## PEOPLE v. ADELPHI CLUB OF THE CITY OF ALBANY.

1. EXCISE LAW—SOCIAL CLUBS—CONSTRUCTION.

    The construction placed upon a statute, penal in character, by public officers charged with a duty of executing its provisions, for many years may properly be considered in determining the legislative intention.

2. SAME.

    The furnishing of liquors by a social club to its members at a fixed price is not a sale within the meaning of chapter 401 of 1892, and no license is required for the purpose.

3. SAME.

    Such a transaction, conducted by a bona fide club, organized under the statute for legitimate purposes, is but the distribution among the members of the property belonging to them in common.

4. SAME.

    The fact that the payment is made does not change the character of the act.

Matthew Hale, for appellant.

Eugene Burlingame, Dist. Atty., for the People

HAIGHT, J.—The offense of which the defendant stands convicted is that of selling strong and spirituous liquors to be drunk upon the premises, without a license, in violation of section 31 of chapter 401 of the Laws of 1892. On the 28th day of

January, 1895, one Leopold M. Stark made a written order, upon
a piece of paper, for five glasses of liquor, and delivered the same
to the steward of the defendant, who filled the order from the
stock of liquors belonging to the club; and the same was served
to Stark and his associates who drank it upon the premises. They
were all members of the club. The following evening, Stark paid
the steward therefor fifty cents, which went into the treasury of
the club. The defendant was regularly incorporated on the 10th
day of February, 1881, as a social club, to establish and maintain
a library, reading and assembly rooms, and to promote social in-
tercourse among its members. It is managed by a board of
trustees, with a membership limited to one hundred and fifty
persons of full age, and residents of the city of Albany. A per-
son can be admitted as a member only when proposed by some
member to whom he is personally known, and upon the recom-
mendation of the board of trustees, and by an election by the
members at a regular meeting of the club, by a two-thirds vote.
The initiation fee is fifty dollars, and the annual dues thirty
dollars. The defendant maintains a clubhouse at the corner of
Division and South Pearl streets in the city of Albany, in which
there are parlors, a ball room, dining room, kitchen, library, card
rooms, billiard, pool and store rooms, with apartments for the
janitor. Meals, cigars and liquors are served to members of the
club upon their written orders, at a price fixed therefor by the
house committee of the board of trustees, which is charged to the
member, who pays therefor monthly. The money so paid in by
the members, together with the annual dues, is used in defraying
the general expenses of the club, its library, reading rooms,
servants, lights, and fuel, and in keeping up its stock of provi-
sions, cigars, and liquors. Its business is conducted solely for
the entertainment and recreation of its members, and not for the
purpose of deriving a profit beyond the defraying of its expenses.
Residents of the city of Albany may be introduced to the club by
any member thereof once a year. Nonresidents may in like man-
ner be introduced, not to exceed ten times a year. A member
introducing a visitor is required to register his name in a book
kept for that purpose, and to be responsible for his conduct while
in the clubhouse. From ten to twelve entertainments—social,

literary and dramatic—are given annually, to which the female friends of members are invited. The statute under which the defendant was indicted provides as follows: "Any person who, without having a license granted to him in pursuance of a law of this state permitting him to sell either strong or spirituous liquors, wines, ale or beer, shall sell strong or spirituous liquors, wines, ale or beer in quantities of less than five gallons at a time, or shall sell any strong or spirituous liquor, wine, ale or beer in quantities of five gallons or more at a time to be drunk or used on the premises where the same shall be sold, or in any garden or enclosure communicating with such premises, or in any public street or place contiguous thereto, shall be guilty of a misdemeanor." Upon the trial the defendant asked the court to direct the jury to find a verdict of acquittal on the grounds—First, that the facts proven do not constitute a crime; second, that the facts proven do not show that the defendant has violated section 31 of chapter 401 of the Laws of 1892, or any of the provisions of said chapter 401 of the Laws of 1892. The court refused to so direct, and an exception was taken by the defendant. The court was then asked by the defendant to charge that "the disposing of wines and liquors by the defendant is not a sale of the same, within the meaning and intent of the provisions of chapter 401 of the laws of 1892, or of the laws amendatory or supplementary thereto, and that the furnishing of wines and liquors by the defendant to its members, as shown by the evidence, is not a violation of section 31 of chapter 401 of the Laws of 1892, nor a violation of any of the provisions of said act." This was refused, and an exception was taken.

Much has already been written with reference to the liability of social clubs under excise laws. An impression has prevailed that they were not brought within the provisions of the statute, and consequently thousands of clubs have been organized all over the country, by hotel and saloon keepers who had been refused a license, for the purpose of evading the laws with reference thereto. The devices adopted by these so-called clubs were numerous, and, in many instances, ingenious. It, however, has not been difficult to ascertain the true purpose and intent of their organization. And the courts thus far have not failed to unmask such

schemes, and hold the organizers thereof responsible for a viola-
tion of the law.    But this defendant is conceded to be a legitimate
club, regularly organized, of many years' standing, and conducted
for the purposes mentioned in its articles of incorporation.

The first question is, has the liability of such a club ever been
determined by this court?   Upon this question the counsel for
the respective parties differ with reference to what was decided.
in the case of People v. Andrews, 115 N. Y. 427; 22 N. E. 358.
In that case the general term held that social clubs, organized for
legitimate purposes, were authorized by the statute; that the
property of the club was, in effect, the joint property of the mem-
bers; and that the furnishing of liquors of the club to its mem-
bers by the steward was not a violation of the statute.    There
was evidence, however, in that tending to show that the club was
a fraudulent concern, organized for the purpose of evading the
law by a saloon keeper who had been refused a license; that any
person could join the club upon the payment of fifty cents, which
was returned to him upon his withdrawal; and that the only
object and purpose of the organization was the sale of strong
and spirituous liquors.    The general term reached the conclu-
sion that the trial court should have submitted to the jury the
question as to whether the organization was a scheme or a device
to evade the excise law.    50 Hun, 592, 595; 3 N. Y. Supp. 508.
Upon this question the court of appeals differed with the general
term, holding that the question of sale, under the statute, de-
pended upon the character of the act.    The opinion calls attention
to the evidence in much detail, tending to show the fraudulent
character of the organization; that the sales were made for cash,
and the business conducted in every respect as in an ordinary
saloon,—and then concludes: "Whatever may be the merits of
the scheme prescribed by the organization, it has no effect here.
It did not control or govern the parties."    We are aware that
it has been generally understood that this court in that case
intended to hold clubs liable under the statute, and that the
general terms, in several instances, have subsequently so held,
resting their decisions upon that case.    People v. Sinell (Sup.),
12 N. Y. Supp., 40; People v. Bradley (Sup.), 11 N. Y.
Supp., 594; People v. Luhrs, 7 Misc. Rep. 503; 28 N. Y.

Supp. 498. But such was not the intention of this court, and to that extent its determination has been misunderstood. The question here presented must therefore be regarded as undecided and still open for consideration. In 11 Am. & Eng. Enc. Law, 727, it is said that: "The distribution of liquors by a bona fide club among its members is not a sale, within the inhibition of a liquor law, even though the person receiving the liquor gives money in return for it, and the law prohibiting the sale of liquors on Sundays does not apply to such a club. It is otherwise, however, where the club is simply a device resorted to as a means of evading the statute." Black on Intoxicating Liquors, at section 142, after referring to the authorities in the different states upon the subject, concludes as follows: "Upon the whole, therefore, notwithstanding some conflicting rulings, the rational conclusion is that the intent must govern. On the one hand, if the object of the organization is merely to provide the members with a convenient method of obtaining a drink whenever they desire it, or if the form of membership is no more than a pretense, so that any person, without discrimination, can procure liquor by signing his name in a book, or buying a ticket or a chip, thus enabling the proprietor to conduct an illicit traffic, then it falls within the terms of the law. But on the other hand, if the club is organized and conducted in good faith, with a limited and selected membership, really owning its property in common, and formed for social, literary, artistic, or other purpose, to which the furnishing of liquors to its members would be merely incidental, in the same way and to the same extent that the supplying of dinners or daily papers might be, then it cannot be considered as within either the purpose or letter of the law." In Graff v. Evans, 8 Q. B. Div. 373, the appellant was a manager of a club under the supervision of trustees, in whom all the property of the club was vested. The club was not licensed for the sale of intoxicating liquors, but these were supplied at fixed prices to members for consumption, the money produced thereby going to the general fund of the club. The manager, in the course of his employment, supplied liquors to a member. It was held that it was not a sale, within the meaning of the licensing act. Field, J., in delivering the opinion of the court, says: "The question

here is, did Graff, the manager who supplied the liquor to Foster, effect a sale by retail? I think not. I think Foster was an owner of the property, together with all the other members of the club. Any member was entitled to obtain the goods on payment of the price. A sale involves the element of a bargain. There was no bargain here, nor any contract with Graff with respect to the goods. Foster was acting upon his rights as a member of the club, not by reason of any new contract, but under his old contract of association, by which he subscribed a sum to the funds of the club, and became entitled to have ale and whiskey supplied to him, as a member, at a certain price." In State v. St. Louis Club (Mo. Sup.), 28 S. W. 604, it was held that the distribution of wines or other liquors among the members of a social club which is a bona fide organization, with limited membership, admission to which is only on a vote of the governing board, and with common ownership of property, is not a sale of liquor within the meaning of the Missouri dram-shop act. This is a recent case, and the opinion contains a review of all of the decisions upon the subject. The courts in our sister states are in conflict upon the question discussed in the above cases. Many of the decisions are based upon local statutes differing materially from our own, and other cases are disposed of on the ground of the fraudulent character of the organization. Attention is called to Com. v. Ewig, 145 Mass. 119; 13 N. E. 365; Seim v. State, 55 Md. 566; Tennessee Club v. Dwyer, 11 Lea, 462; Piedmont Club v. Com., 87 Va. 541; 12 S. E. 963; State v. McMaster, 35 S. C. 1; 14 S. E. 290; Barden v. Montana Club, 10 Mont. 330; 25 Pac. 1042; Koenig v. State, (Tex. Cr. App.), 26 S. W. 835; People v. Soule, 74 Mich. 250; 41 N. W. 908; State v. Horacek, 41 Kan. 87; 21 Pac. 204; State v. Essex Club, 53 N. J. Law, 199; 20 Atl. 769; State v. Lockyear. 95 N. C. 633; State v. Neis, 108 N. C. 787; 13 S. E. 225; State v. Mercer, 32 Iowa, 405; Rickart v. People, 79 Ill. 85; State v. Easton Social, Literary & Musical Club, 73 Md. 97; 20 Atl. 783; Kentucky Club v. City of Louisville, 92 Ky. 309; 17 S. W. 743; Newell v. Hemingway, 16 Cox, Cr. Cas. 604; Com. v. Pomphret, 137 Mass. 564–567.

For a full and elaborate consideration of the cases, we refer to Black on Intoxicating Liquors (section 142) and to State v. St.

Louis Club, supra. A further discussion of them here we do not deem necessary or profitable, for the question presented must be determined on a construction of our own statute. It first provides for the creation of boards of excise in towns and cities, prescribes their powers and duties, and then, in section 19, provides that "a board of excise may, when authorized by law, and not otherwise, grant," etc., a license. It then specifies the cases in which a license may be granted: First, to the keeper of an inn, tavern or hotel; second, to the keeper of a saloon; third, to the keeper of a saloon for the sale of ale and beer only; fourth, to the keeper of a store; and, fifth, to the keeper of a drug store. The statute contains no provisions authorizing the issuing of a license to a club or an organization of the character of defendant. And it was conceded on the part of the learned district attorney, upon the argument, that the defendant was not an inn, tavern, or hotel, a saloon, store, or drug store, within the meaning of the act which permitted boards of excise to issue a license to it. We are thus brought to a consideration of the provisions of section 31, under which the defendant was indicted. It is prohibitory as to form and character, of the sale of strong and spirituous liquors, wines, ale or beer by a person without having a license. It provides that a person offending shall be guilty of a misdemeanor. This section, doubtless, must be considered in connection with section 19, which, as we have seen, regulates the sales of strong and spirituous liquors by requiring persons who engage in that business to first procure a license, and specifies the kinds of license which the board of excise may issue. The fact that clubs of the nature of the defendant are not included within its provisions has an important bearing upon the meaning to be placed upon the provisions of section 31. In this connection the construction placed upon a statute penal in character, by public officers charged with the duty of executing its provisions for many years, may properly be considered in determining the legislative intention. Potter, Dwar. St. 183, 184; People v. Dayton, 55 N. Y. 367-378; Brown v. U. S., 113 U. S. 568; 5 Sup. Ct. 648. Upon this subject the evidence shows that clubs in this state have existed for a long period, that they have not been required to take out a license, and yet it is a well-known fact that they have

kept on hand stocks of liquors, which they have distributed to their members. Was it then intended that the distribution of liquors by a club among its members should be a sale, within the contemplation of the statute? If so, commissioners of excise, police officers, and district attorneys have for many years neglected their official duties. As we have seen, the defendant is a social club organized under the statute for a legitimate purpose, to which the furnishing of liquors to its members is merely incidental and is not unlike the supplying of dinners, or articles which the member may desire for his own comfort or entertainment. The defendant has a limited and selected membership. And, while the property and supplies are technically owned by the club, each member is, in equity, an equal owner in common. It was not organized for the purpose of engaging in a business for profit, or for the traffic in liquors. It engages in no business other than that which pertains to the maintenance of its library, reading rooms, and the social intercourse and comfort of its members. Liquors, as well as other supplies, are distributed to its members, upon the written order of the member, at a price fixed by the officers of the club, designed to cover the purchase price and disbursements in serving. These orders pass to the steward or treasurer of the club, and are charged against the member, who settles therefor monthly. We think that the transaction with Stark did not amount to a sale, within the meaning of the statute. It was but a distribution among the members of the club of the property that belonged to them. The fact that a payment was made does not change the character of the act, for it was but the means adopted by which each member could receive his own, and not that belonging to his fellow member. The payment went into the treasury to ultimately restore that which he had taken. We think the court erred in refusing to charge, as requested, that the act charged against the defendant was not a violation of the statute, and that the judgments of the general term and court of sessions should be reversed, and the defendant discharged. All concur. Judgment reversed.