In the Matter of the Application of HENRY H. LYMAN for an Order Revoking and Canceling Liquor Tax Certificate No. 1989, Granted to THE YOUNG MEN'S COSMOPOLITAN CLUB of New York.

HENRY H. LYMAN, Appellant; THE YOUNG MEN'S COSMOPOLITAN CLUB of New York, Respondent.

*Liquor Tax Law — the burden of proof rests upon the licensee of bringing himself within the exception as to sales of liquor on Sundays and after one o'clock A. M. — an incorporated club may lose its rights by changing its manner of business — right of the court to examine the whole case in determining the question.*

Upon an application by the State Commissioner of Excise to revoke a liquor tax certificate upon the ground that the licensee sold liquor on Sundays and between one o'clock and five o'clock in the morning on week days in violation of section 31 of the Liquor Tax Law (Chap. 112 of 1896, as amended by chap. 312 of 1897), the burden rests upon the licensee of proving that it is a corporation or association organized in good faith under any law which, prior to May 6, 1895, provided for the organization of societies or clubs for social, recreative or similar purposes, and that such corporation or association was actually lawfully organized and, if a corporation, that its certificate of incorporation was duly filed prior to March 23, 1896, and that it at such date trafficked in or distributed liquors among the members thereof, and is thus excepted by section 31 from the clauses of that section forbidding such sales.

A corporation which, having been duly organized in good faith originally for social, recreative and similar purposes, acquired a right under the statute to sell liquor to its members on Sundays, or at any hour on any other day, forfeits such right where it so changes the purpose of its organization or its manner of conducting its affairs that it becomes a mere establishment for the sale of liquors to any person who may choose to buy them.

The court, in determining whether this right exists in the corporation, is not concluded by the fact of the club's organization, but may examine into the whole case for the purpose of determining the question.

APPEAL by the petitioner, Henry H. Lyman, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 13th day of December, 1897, denying the petitioner's application for the revocation and cancellation of the liquor tax certificate granted to the Young Men's Cosmopolitan Club of New York.

*Royal R. Scott*, for the appellant.

*William H. Klenke*, for the respondent.

Rumsey, J. :

On the 26th of April, 1897, there was presented to the Special Deputy Commissioner of Excise for the county of New York an application of the Young Men's Cosmopolitan Club of New York, by Charles Smith, its president, for a liquor tax certificate under the provisions of the Liquor Tax Law (Chap. 112, Laws of 1896). Upon that application, which was in proper form, a liquor tax certificate was granted.   On the 4th of June, 1897, a petition was presented to this court by Mr. Lyman, the State Commissioner of Excise, asking for an order revoking and canceling the certificate which had been granted to this club.   The application was made pursuant to the provisions of section 28 of the Liquor Tax Law as it was amended by chapter 312 of the Laws of 1897.   An order to show cause was granted, and, upon the return of that order, the court made an order of reference to take proof of the facts and report the evidence to the court.   Upon the coming in of the referee's report a further hearing was had, which resulted in an order denying the petition, and from that order this appeal is taken. The grounds upon which the application to revoke the certificate was made were that the respondent was violating the Liquor Tax Law by selling intoxicating liquors on Sunday and on week days between one o'clock and five o'clock in the morning, which is forbidden by section 31 of the act.   (Chap. 312 of the Laws of 1897.)   That the sales were made at such times was not denied ; but the respondent claimed that it was within one of the exceptions of the statute, and that for that reason it was authorized to make such sales.   As they were undoubtedly illegal unless the respondent brought itself within an exception of the statute, the burden of so doing was upon it.   (Black Intox. Liq. § 511.) By way of supporting that burden, the respondent asserted and attempted to prove that it was a club which had been organized in good faith before May 6, 1895, and whose certificate of organization was filed before March 23, 1896 ; and for that reason it claimed that it was within the exception (§ 31 of the statute), by which it is provided that a corporation or association organized in good faith under any law which, before May 6, 1895, provided for the organization of societies or clubs for social, recreative or similar purposes and which corporation or association

was actually lawfully organized, and, if a corporation, its certificate of incorporation duly filed before March 23, 1896, and which at such date trafficked in or distributed liquors among the members thereof, is excepted from the provisions of those clauses of the section which forbids sales by the holder of the certificate on Sunday or between one o'clock or five o'clock in the morning of any other day. It was assumed by the court below that the evidence established that this club was actually organized in good faith under some law providing for the organization of clubs for social, recreative or similar purposes before May 6, 1895. The evidence upon that subject was simply that an association, calling itself the Young Men's Cosmopolitan Club of the eighth Assembly district of New York, had been formed several years before; that it was unincorporated; had no written by-laws, but that it had some sort of a practice by which members were admitted — that practice being that one desiring admission made an application to a committee of three, who considered the application for five or ten minutes and if they reported favorably, admitted the applicant, and if not, rejected him. It appeared that no action of the club was ever taken upon the application of any person for membership. The testimony was that the objects of the club were partly political and partly social, but the witness, although being somewhat doubtful upon all those points, was perfectly clear that from the beginning of the organization of the unincorporated association it had as a part of its business sold liquor to its members. Upon that point there was no doubt in his mind, or hesitation in his answers. It appeared further that this association was unincorporated until the 15th of June, 1895, at which time articles of incorporation were filed and the club was removed to its present location. Without deciding that these facts established that this corporation was a club duly organized for social, recreative or similar purposes, we shall assume that that is the case (as was assumed in the court below), and shall consider here only the question on which this case must ultimately turn, viz., whether a corporation organized in good faith originally for social, recreative or similar purposes, and which by virtue of that organization has acquired a right under the statute to sell intoxicating liquors to its members on Sundays or at any hour of any other day, is liable to lose that right by a change in the

purposes of the organization or in the manner of conducting its affairs.

For a long time there had been not only in this State, but in almost every State of the Union, a serious question whether clubs were amenable to the laws which prohibited the sale of liquor without a license. The final conclusion in this State as established by the Court of Appeals in the case of *The People* v. *The Adelphi Club* (149 N. Y. 5) was that such clubs organized and carried on in good faith for social, recreative or similar legitimate purposes, to which the furnishing of liquors to its members is merely incidental, and having a limited and selected membership, were not within the statute, and were not required to take out a license for the sale of intoxicating liquors. The question had previously been mooted in the case of *The People* v. *Andrews* (50 Hun, 592), in which it was held by the General Term of the fifth department that if a club was fraudulently organized for the purpose of evading the excise laws, it would constitute no defense, but the question of fraud was one for the jury. The judgment in that case, however, was reversed by the Court of Appeals. (*People* v. *Andrews,* 115 N. Y. 427.) The steward of an alleged club had been indicted for selling liquors to persons who were not members of the club. The position taken by the defendant in the Court of Sessions, where the indictment was tried and the conviction had, was that the club was a *bona fide* club, duly organized for social purposes, and, therefore, not within the act, and not required to take out a license. This contention of the defendant was overruled by that court, which held that the organization was within the act, and the sale of liquors by the steward was a violation of the statute. The General Term, upon appeal, reversed this conviction, holding that the question whether the club was organized under the act or whether it was organized for the purpose of evading the act, was a question for the jury, and should have been submitted to it. Upon appeal to the Court of Appeals, it was held that the transaction which was charged as a violation of the Excise Law was a violation of the law, and the judgment of the Court of Sessions was affirmed; but this ruling was not put upon the ground that the sale of liquors by a social club to a member, or to persons not members, upon the request of a member, was a violation of the Excise Law, but upon

the ground that, as a matter of law, the scheme was a fraudulent one to avoid the provisions of the Liquor Law, and for that reason the sales were illegal. (*People* v. *Adelphi Club*, 149 N. Y. 10, 11.) This is, therefore, an authority for the proposition that whatever may be the alleged purpose of an organization the court is at liberty to examine into all the facts, and conclude from those facts whether the particular organization is or is not within the provisions of the Excise Law.

The object of the statute is to control the sale of intoxicating liquors in the interest of good order. To that end it has been thought necessary, in accordance with the judgment of the great body of the community, that miscellaneous sales to everybody of intoxicating liquors should not be permitted on Sunday, and that there should be certain hours of other days during which no sales should be made. But the law, under certain circumstances, has permitted certain people to distribute liquors during the otherwise prohibited hours. The object of this exception to the statute is quite clear. There are in every city, and in many of the larger villages of the State, organizations for social purposes, composed of members chosen according to some rule, who have a house or rooms to which they resort, and in which no persons are permitted, except members or guests of members, who are invited according to fixed rules, and who, to a certain extent, use these places as their homes, where they go to meet their friends, to pass their time, and in many instances, where they board and sometimes sleep. So far as these organizations are formed for social purposes or for recreation, or for other purposes for which men are accustomed to come together, and so far as the furnishing of drink is incidental to their organization, to the same extent as the furnishing of meals or newspapers or such other conveniences as a man is accustomed to have in his home, the statute permits it to be done at all times. If it appears that a club is lawfully organized under the provisions of section 31, which has been referred to above, and that liquors are furnished under those limitations to persons who are members of the organization, or to the invited guests of members under such limitations as the organization has prescribed, it is undoubtedly entitled to insist upon its right to be within the exception in the statute. But the Legislature in creating the exception had in view the particular object for

which these societies were organized. They must have been, as the statute expressly provides, organized for social, recreative or similar purposes, as to which the supplying of meals and liquors was incidental merely. The statute was not intended to apply to an organization, the sole object of which was to supply liquors to its members for the purpose of evading the provisions of the Liquor Tax Law. So much must be acknowledged by everybody. The question here, however, is not whether this club, so called, was originally within the exceptions of the Liquor Tax Law; but, conceding that it was within them in the beginning, has it so conducted its business that there is no difference between its acts and those of a common seller of intoxicating liquors who keeps a bar where liquor is sold to any person who comes with money enough to pay for it, and, if it has so conducted its business, does it thereby lose its right to insist upon the exception which it acquired by the fact of its organization?

The manner of conducting the business of this club is not in dispute. Although it appears that it was organized some years before, there is no very definite statement as to its manner of carrying on business until its articles of incorporation were filed in June, 1895. Soon after they were filed the place of business was transferred from 64 Essex street, where it had been in the habit of meeting, to 518 Sixth avenue, where its rooms now are. The present rooms are over the liquor saloon of Charles Smith, a liquor seller. Charles Smith is the president of this club and it was he who, in April, 1897, applied for the liquor tax certificate. The treasurer and general manager of the club is the person in charge of the liquor saloon below its rooms. The money received for the liquors which are sold in the club are in charge of the general manager, who gives it to the treasurer when the treasurer asks for it. The liquors of the club, so far as it has any, seem to be kept in connection with the liquors of the saloon, and they are furnished by the persons who supply the customers in the saloon. It appears, and is not disputed, that a membership in the club is acquired, when it is acquired at all, by the purchase of a ticket from a person whose post is in the saloon near the entrance to the stairway which leads up to the rooms of the club. This ticket is sold for twenty-five cents to anybody who asks for it, and it seems fairly to be inferred from the

evidence that no questions are asked of the persons who apply for a ticket, but they are sold to any one who desires to buy them, and there is no investigation, discrimination or selection as to the membership. It appeared, too, without dispute, that membership tickets were not necessary to obtain an entry into the club, or the right to buy liquors there. Several witnesses testified without contradiction that they went into the club without any questions being asked of them, passing by the man at the door; that they were not members and had never been there before, but they went to the club and sat down at the tables placed there for that purpose and were served with liquor in the same way as any person might have been in any other saloon. Not only were men served there, but women also; and it appears without dispute that during late hours of the night and down into very early hours of the morning the place was occupied by men and women sitting at the tables and drinking together as in any other place of a similar nature where liquors are sold freely to all persons. The place was fitted up for the sale of liquors like any other saloon. There were no indicia that it was used for any other purpose than the sale of liquors, and although the certificate of incorporation was put in evidence there was no claim that the organization had any other purpose than the sale of liquors. The case is a bald one. It presents clearly and fully the question indicated before whether a place of this kind is brought within the exception of the Liquor Tax Law simply because the certificate is issued to a body incorporated in good faith under the law for the organization of social clubs. Upon the facts shown it is quite clear that the only object for which this place is maintained is the sale of liquors to any persons who choose to come there and buy them, and it has no other reason for existing. It is clearly a device to evade the law. If a club is organized for social or recreative purposes, having a membership which is chosen in accordance with some rule, or after some investigation with regard to the applicant, and some means are taken to ascertain whether his membership is agreeable to the other members of the club, and it appears that the selling of liquors is merely incidental to the other objects for which the club is organized, it may well be held to be within the exceptions of the statute, although liquors are sold, not only to its members, but to other persons who, according to some rule of

the club, are introduced within its precincts as invited guests. Where it appears that the club has no other reason for its existence than the sale of liquors to any person who chooses to become a member by paying a small sum; that there is no selection of its members, but that any person is eligible; that persons who are not members are permitted to buy liquors in the club; that women are also permitted, with or without membership tickets, to purchase liquors and drink them there, so that it is quite clear that the whole scheme is one to evade the statute, the fact that a lawfully organized corporation carries on the business does not prevent it from being a common rum-selling establishment, nor secure to it the benefit of the exception. (Black Intox. Liq. § 142.) In the book just cited, the authorities upon the subject are collated, and the rule just above laid down is to be clearly evolved from them. (11 Am. & Eng. Ency. of Law, 727.) Where it appears plainly that the corporation exists solely for the purpose of carrying on an establishment for selling intoxicating liquors to any one who chooses to buy them, the court is not bound to stop with the fact of its organization, but may examine into the whole case, and if it concludes that it is organized for the purpose of evading the statute, it is at liberty to say so and revoke the certificate, as it might revoke the certificate of any other person who sold liquors illegally. For these reasons we think that the court below erred in denying the motion to revoke the certificate, and its order should be reversed, with ten dollars costs and disbursements, and the motion to revoke the certificate granted, with twenty-five dollars costs and the disbursements of the proceedings.

VAN BRUNT, P. J., PATTERSON and McLAUGHLIN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted, with twenty-five dollars costs and disbursements.