[No. 5067.]
[No. 2633 C. A.]

CREIGHTON ET AL. V. THE PEOPLE, FOR THE USE OF THE
TOWN OF MANITOU.                    •

1. Pleading—Waiver of Defects—Harmless Error.

An action for the violation of an ordinance, brought in the
name of the people of the state of Colorado for the use of the
town of Manitou, and in which the complaint failed to name the
parties to whom the illegal sales were made, being a civil action,
such defects were cured by going to trial on the merits, not-
withstanding that 2 Mills' Ann. Stats., § 4433, provides that such
actions shall be brought in the name of the people of the state of
Colorado. And further, as the defendants were not surprised
thereby nor deprived of any defense, there could be no possible
prejudice to them in either of the particulars complained of; and
further, the judgment by the caption of the complaint, in the
particular assigned as error, expressly appropriated the recovery
to the particular use provided by statute (2 Mills' Ann. Stats.,
§ 4435), that is, to the use of the town of Manitou.—P. 316.

2. Intoxicating Liquors — Sales Without License — Cities and
    Towns — Violation of Ordinance—Practice in Civil Actions
    —Directing Verdict.

In an action under 2 Mills' Ann. Stats., § 4433, for the violation
of an ordinance of a city, against the manager of an alleged
social club operating without a license for selling liquor to per-
sons who were not members, it was the duty of the court, at the
close of the evidence establishing such sale, to have instructed
the jury to find for the plaintiff.—P. 319.

*Appeal from the County Court of El Paso County.
Hon. Jas. A. Orr, Judge.*

.    Action by the people of the state of Colorado,
for the use of the town of Manitou, against B. B.
Creighton and William Wagoner. From a judgment
in favor of plaintiff, defendants appeal.

*Affirmed.*

Messrs. VANATTA & WOODRUFF, for appellants.

Mr. IRA R. HARRIS and Mr. J. W. KRIEGER, for ap-
pellee.

Mr. JUSTICE GUNTER delivered the opinion of the court:

This action was for a violation of an ordinance of the town of Manitou, prohibiting the sale of intoxicating liquors without license. It originated in the police court, where plaintiff had judgment. Upon appeal to the county court plaintiff had a verdict and judgment. From the latter judgment defendants are here as appellants.

1.   The action was brought in the name of the People of the State of Colorado for the use of the Town of Manitou. The complaint upon which the action was based failed to name the parties to whom the illegal sales charged therein were made. Section 4433, 2 Mills' Ann. Stats., provides that such actions shall be brought in the name of The People of the State of Colorado. Because of such statute it is claimed the action was not brought in the name of the proper party plaintiff. It is further contended that because the complaint failed to name the parties to whom the illegal sales charged therein were made, that, in such particular, the complaint was indefinite and uncertain.

This is a civil action.—*City of Durango v. Reinsberg*, 16 Colo. 327. In civil actions the errors so complained of—if they exist—are cured by pleading over, or a trial to the merits. There was a trial, to the merits both in the magistrate court and in the county court. Further, there was no possible prejudice to the defendants in either of the particulars so complained of. There was no surprise therefrom, nor were defendants deprived of any defense to the cause of action proceeded on. Further, the judgment by the caption of the complaint, in the particular assigned as error, expressly appropriated the recovery to the particular use pro-

vided by statute, that is, to the use of the town of Manitou.—Mills' Ann. Stats., vol. 2, § 4435.

There certainly was no prejudicial error in such particulars.

2. It is said error was committed in giving certain instructions and in refusing an instruction tendered.

If the court should, at the close of the evidence, have directed a verdict for the plaintiff, there was no prejudicial error in the charge or in the refusal to charge.

The absence of a license was admitted. The evidence showed the serving of liquor for money in quantities prohibited by the ordinance, that is, illegal sales, unless taken out of the ordinance by the special defense presented.

Defendants rely upon the law as declared in *State ex rel. v. St. Louis Club,* 125 Mo. 308; *People v. Adelphi Club,* 149 N. Y. 5; *Klein v. Livingston Club,* 177 Pa. 224, and Black on Intoxicating Liquors, § 142.

While there is some conflict in the authorities as to the serving of liquors by said social clubs to members and guests, it would be *obiter* for us to align ourselves in this case; because, accepting the law for the purpose of this ruling as counsel for appellants claim it to be, defendants clearly failed to make out a defense.

At § 142, Black on Intoxicating Liquors, it is said:

"On the one hand, if the object of the organization is merely to provide the members with a convenient method of obtaining a drink whenever they desire it, or if the form of membership is no more than a pretense, so that any person, without discrimination, can procure liquor by signing his name in a book or buying a ticket or chip, thus enabling

the proprietor to conduct an illicit traffic, then it falls within the terms of the law. But on the other hand, if the club is organized and conducted in good faith, with a limited and selected membership, really owning its property in common, and formed for social, literary, artistic, or other purposes to which the furnishing of liquor to its members would be merely incidental, in the same way and to the same extent that the supplying of dinners or daily papers might be, then it cannot be considered as within either the purpose or letter of the law.''

In *State ex rel. The St. Louis Club, supra,* it is said:

''The facts of this case remove it entirely from that class in which the club was used as a mere scheme to sell liquor in defiance of law. In those cases the prime object and purposes was the sale of liquor, and the club was a mere evasion of the law; in this case the use of wine and liquor, as shown in the agreed case, was a mere incident, subsidiary to the higher and chief purpose of the association, to wit, the advancement by social intercourse of the bodily and mental health of its members.''

And therein it is further said:

''Applying the test that commends itself to our best judgment, in view of the conflict in the decisions, we think that where a social club as in this case is clearly a *bona fide* organization with a limited membership and admission into which cannot be obtained by any person at his pleasure and its property is actually owned in common by its members, a distribution of wine and other liquors belonging to such club, among its several members, is not a sale of liquor by retail or in original packages within the meaning and purview of our dram-shop act, although technically the act does amount to a sale for some purposes.''

There was an attempt to defend under the authorities so cited. As stated, the facts clearly did not sustain the defense.

Creighton applied to the authorities of the town of Manitou for a license to operate a saloon. This was refused. Immediately thereon he, together with defendant Wagoner, and one other party formed a corporation under the name of "The Arcade Club," the purpose of which, according to the articles of incorporation, was the organization and operation of a social club. The furniture and fixtures of a former saloon were acquired, and in a room formerly occupied by a saloon the Arcade Club was located. Creighton, Wagoner, and the third incorporator, Brickenhoff, were the directors of the club according to the articles of incorporation. Wagoner was chosen its president and manager, Creighton its secretary and treasurer. They were present in and about the club room managing its operations. A porter was employed who usually served the customers; sometimes this office was performer by Wagoner. A stock of liquors was secured. Liquor in prohibited quantities was served to patrons of the bar and paid therefor in cash at current prices. It does not appear that these patrons were even alleged members of the club. At other times liquor was served to a pretended member, together with some guest, and paid for by the member. Later, the guest paid to the member the amount so expended. Whether the club was a social organization or not, it was a violation of the law to sell liquors to non-members, or to the guests of non-members. Further, the practical operations of the club were a clear evasion of law, and it seems to have been organized for that purpose. The appointments of the room used for the operations of the club were simply those of an ordinary saloon, and consisted largely of a bar,

bar furnishings and glassware, card tables and chairs, a pool table, and a billiard table. The chief characteristic of the club was not social, and the dispensation of intoxicants was not merely incidental as the service of them at the family board. The dispensation of liquor was the chief characteristic purpose and occupation of this so-called social club. The membership was practically without limitation, its membership might become unlimited, practically anybody could drink at its bar.

We think it clear that the court, at the conclusion of the evidence, should have charged the jury to find for the plaintiff.

Judgment affirmed.                  *Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE MAXWELL concurring.