

# THE ATTORNEY GENERAL

## OF TEXAS

Gerald C. Mann

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable John S. Rudd
Acting Director
Teacher Retirement System of Texas
Austin, Texas

Dear Sir:
Opinion No. O-3152
Re: Status of teacher on leave
of absence.

We have received your letter of August 12, 1941, and also your supplementary letter thereto of September 20, 1941. In your supplementary letter you set out certain facts relating to three individuals, and you are now concerned with their status. We quote from such letter as follows:

"1. Mrs. Myrtle Grey was re-elected as a teacher in the Fort Worth Public Schools for the school year 1937-38 at a regular meeting of the Board of Education of the Fort Worth Independent School District held on June 4, 1937. Her contract was for a term of one year, beginning July 1, 1937, and ending June 30, 1938. Mrs. Gray was injured in an accident during the early part of June, 1937, and was unable to resume her school work. Under the regulations governing the Fort Worth Independent School District, the Superintendent of Schools has been authorized to grant leave of absence on account of serious illness. The Fort Worth Superintendent states that he had hoped that she would recover and resume her work some time during the 1937-38 school year, and that a substitute teacher was assigned to her position and the position held for her in case she was able to teach later. The Fort Worth Superintendent advised us further as follows:

'At the beginning of 1938-39, Mrs. Gray was still unable to resume her school work. However, under the regulations authorizing the superintendent to grant leave of absence to a teacher because of serious illness, Mrs. Gray was considered

as a leave of absence teacher. In case of
prolonged illness, it has been customary
to continue the grant of leave of absence
for a period of more than one year, if
there is a probability that a teacher may
later return to service within the school
system. Since Mrs. Gray was unable to
write because of the nature of her injury,
application for leave of absence was not
required in her case. Because of my
personal knowledge of her physical condi-
tion, leave of absence was extended.'

Mrs. Gray was employed in the Fort Worth Schools in
the 1939-1940 and the 1940-1941 school years as a
reserve teacher at a salary of $631.80 per year.

"2. Miss Bertha Graham was given a teacher's
contract for the school term 1937-38 as a teacher
in the public schools of Dalhart under date of
May 4, 1937. Under date of May 14, 1937, Miss
Graham accepted and signed the contract. At a
meeting of the Board of Trustees of the Dalhart
Public Schools held on August 20, 1937, Miss Graham
was granted a leave of absence for one year. Miss
Graham advises us:

'I had no contract for later years, as I
was unable to return to work on account of
my health. However, I was carried as a
teacher on leave of absence and could have
returned to work at any time, had I been able.'

"3. On September 14, 1937, the Dallas Board
of Education passed the following motion:

'that Miss Anne Kayser be re-elected as a
teacher in the elementary schools at a
salary of $2,000.00 per school year of nine
months, and that she be allowed a leave of
absence for the session 1937-38 on account
of her health.'

Under date of September 29, 1937, Miss Anne Kayser
executed a contract, copy of which is attached
hereto. Under date of August 30, 1938, the Dallas
Board of Education passed the following motion:

'The election of the following teachers
was held up at the regular election in
June, on account of failure to meet cer-
tain requirements. These requirements
have now been met, and I recommend that
they be re-elected.

| White Elementary | Salary 1937-38 | Increase 1938-39 |
|---|---|---|
| . . . . | . . . | . . . |
| Kayser, Anne | $2000.00 | -- ' |

Under date of September 13, 1938, the Dallas Board
of Education passed the following motion:

'that the resignation of Anne Kayser be accepted, and that a special teacher be authorized for City Park School at a salary of $100.00 per school month.'"

We now return to your first letter to get the questions which the Teacher Retirement Board desires answered. Such questions read as follows:

"1. In the event the individual furnished satisfactory evidence to the effect that such individual was prevented from returning to active service because of physical condition, would the Board of Trustees be carrying out the intent of the Retirement Law and would they be acting within the limitations imposed by the law on the Board of Trustees if they ruled that the individual had established membership in the Teacher Retirement System, was entitled to credit for prior service, and was eligible to receive benefits in accordance with and subject to the provisions of Section 5 of the Teacher Retirement Law?

"2. In the event the individual furnished satisfactory evidence to the effect that such individual was prevented from returning to active service because of physical condition, would the Board of Trustees be carrying out the intent of the Retirement Law and would they be acting within the limitations imposed by the law on the Board of Trustees if they ruled that the member had not established credit for prior service and refused to issue a prior service certificate to the individual?

"3. In the event the individual cannot furnish satisfactory evidence to the effect that such individual was prevented from returning to active service because of physical condition, would the Board of Trustees be carrying out the intent of the Retirement Law and would they be acting within the limitations imposed by the law on the Board of Trustees if they ruled that the individual had established membership in the Teacher Retirement System, was entitled to credit for prior service, and was eligible to receive benefits in accordance with and subject to the provisions of Section 5 of the Teacher Retirement Law?

"4. In the event the individual cannot furnish satisfactory evidence to the effect that such individual was prevented from returning to active service because of physical condition, would the Board of Trustees be carrying out the intent of the Retirement Law and would they be acting within the limitations imposed by the law on the Board of Trustees if they ruled that the member had not established credit for prior service and refused to issue a prior service certificate to the individual?"

"Teacher" is defined by Section 1 of the Teacher Retirement Act (Article 2922-1, Vernon's Annotated Civil Statutes) as follows:

"(3) 'Teacher' shall mean a person employed on a full time, regular salary basis by boards of common school districts, boards of independent school districts, county school boards, Retirement Board of Trustees, State Board of Education and State Department of Education, boards of regents of colleges and universities, and any other legally constituted board or agency of an educational institution or organization supported wholly or partly by the State. In all cases of doubt, the Retirement Board of Trustees, hereinafter defined, shall determine whether a person is a teacher as defined in this Act. A teacher shall mean a person rendering service to organized public education in professional and business administration and supervision and in instruction, in public schools as defined in Subsection (2) of this Section."

Subsection 1 of Section 3 of the Act reads as follows:

"(1) All persons who are teachers on the date as of which the Retirement System is established shall become members as of that date as a condition of their employment unless within a period of ninety (90) days after September 1, 1937, any such teacher shall file with the State Board of Trustees on a form prescribed by such Board, a notice of his election not to be covered in the membership of the system and a duly executed waiver of all present and prospective benefits which would otherwise inure to him on account of his participation in the Retirement System."

We quote Subsection 1 of Section 4:

"(1) Under such rules and regulations as the State Board of Trustees shall adopt each person who was a teacher, as defined in this Act, at any time during the year immediately preceding the establishment of the System, and who becomes a member during the first year of operation of the Retirement System, or who is a member at the beginning of the school year 1937-1938, shall file a detailed statement of all Texas service, as a teacher, rendered by him prior to the date of establishment of the Retirement System for which he claims credit."

Thus, we see under the terms of the statute that those persons who were teachers on the date of establishment of the Teacher Retirement System became members thereof as of that date, unless thespecified notice and waiver were filed. We must therefore determine who were teachers on the date of establishment of the Teacher Retirement System.

The Teacher Retirement System was established on July 1, 1937. Section 2 of Article 2922-1; Opinion No. O-646.

Referring to Section 1(3), we see that there are two requirements in the definition of "teacher": namely, (1) a person "employed on a full time, regular salary basis;" (2) a person "rendering service to organized public education in professional and business administration and supervision and in instruction, in public schools. . . "

We do not believe that the second requirement makes it necessary that a person be "rendering service" on July 1, 1937, for membership in the System as of that date. We are of the opinion that this requirement is nothing more than a generalization of the type of work which must be done before a person may qualify as a "teacher" under the Act. We reached this same conclusion in Opinion No. O-646, rendered on May 17, 1939, to Honorable Mortimer Brown, Executive Secretary, Teacher Retirement System of Texas. We quote from that opinion as follows:

". . . We do not think that 'rendering service to organized public education,' etc., was intended to mean that in order to be a teacher, as defined in this Act, that the person would necessarily have to be at that time actually engaged in such service, but rather that this provision is descriptive of the type of work necessary to be performed to qualify as a teacher. This construction becomes more evident when various sections of the Act are considered, such as Section 3, Subsection 1, which provides that all persons who are teachers on the date as of which the Retirement System is established shall become members, because it is evident that it was intended by such section to reach every person engaged in the profession of a teacher, when, in fact, the date upon which the System was established was July 1, and as a matter of common knowledge few teachers were actually engaged in rendering the service defined at that time."

It follows that those persons engaged in the profession of teaching and employed on a full time, regular salary basis to render service to "organized public education in professional, and business administration and supervision and in instruction, in public schools" on the date that the System was established became members thereof as of that date regardless of whether they were actually "rendering service."

We will now turn to the specific fact situations presented in your letter of September 20, 1941.

1. On June 4, 1937, the Board of Education of the Fort Worth Independent School District re-elected Mrs. Myrtle Gray as a teacher. Her contract was for a term

of one year beginning July 1, 1937, and we assume from the context of both your letters that she was employed on a full time regular salary. We are not informed whether she was actually teaching at the time of the contract, but in view of our holding that "rendering service" is merely descriptive of the type of work to be performed, it makes no difference whether she was teaching July 1, 1937. We are of the opinion that she became a member of the Teacher Retirement System on that date.

Mrs. Gray was seriously injured in an automobile accident before school opened, and was granted a leave of absence. A substitute teacher was assigned to her position, but it was hoped that she would recover and resume her work during that year. At the beginning of the next school year, Mrs. Gray was still unable to return to her position, and was considered a leave of absence teacher. She was employed in the Fort Worth Schools in the 1939-1940 and 1940-1941 school years as a reserve teacher at a salary of $631.80 per year.

The Teacher Retirement Board realized that a number of teachers would be on leave of absence during the school year 1937-1938. It, therefore, passed the following regulation:

"Mr. Shaver moved that in view of the fact that subsection 1 of Section 3 stipulates that 'all persons who are teachers on the date as of which the Retirement System is established shall become members' and in view of the fact that subsection 3, Section 1 says that 'teacher shall mean a person employed on a full-time regular salary basis by boards of school districts, etc.', certain specific requirements shall be made of a teacher on leave of absence during the school year 1937-38 if he is to be included in the membership of the Retirement System and not impair his rights to prior-service credit by being on leave of absence during the school year 1937-38, as follows: A statement must be received from the superintendent of schools or from the president of the board of education of the employing district stating that the teacher was an employee of the system during the school year 1936-37, that the teacher is considered a member of the faculty for the year 1937-38 with a leave of absence from active work and that the teacher has a definite agreement with the Board to return to work in the same system for the year 1938-1939. Motion was seconded by Mr. Mills and carried."

We are informed that the statement required by the above quoted regulation was received for Mrs. Gray, and also for the persons involved in the other two factual setups. We are also informed that all three of the persons were eligible for benefits under the Act if they were members of the Retirement System.

Did the Teacher Retirement Board in the exercise of the rule making powers granted by Article 2922-1, have authority to pass a regulation covering teachers on leave of absence? If so, then under the above quoted regulation and Section 4(1) of the Act, Mrs. Gray is entitled to prior-service credit.

On September 22, 1937, this department ruled in a letter opinion addressed to Honorable Mortimer Brown that once a teacher becomes a member of the Teacher Retirement System, he cannot withdraw from membership except (1) to cease being a teacher, (2) or die, or (3) to be retired with a disability benefit or on account of age with such annuity or other benefit as is selected by the teacher. This holding was affirmed in Opinion No. O-1530, rendered on October 13, 1939, to Honorable J. C. Patterson, County Attorney, Benjamin, Texas.

Mrs. Gray was under contract, but was granted a leave of absence because of her injury. A substitute teacher was assigned to her place, but Mrs. Gray, if she had recovered sufficiently, would have returned to work. She was under duty and had a right to resume her duties upon recovery. We are of the opinion that she did not cease being a teacher.

In the case of People v. Lynch, 149 N. Y. S. 895, plaintiff instituted proceedings for a mandamus to compel the Labor Commissioner of the State of New York to reinstate her as an employee. She had been granted a leave of absence because of poor health. Upon recovery from her illness she wrote to the Commissioner requesting that her leave of absence be terminated and that she be assigned to duty. Action on her request was delayed, and she instituted these proceedings. The Commissioner's defense was that since the plaintiff had been separated from her work for more than a year, she could not be reinstated without another civil service examination. He relied on that part of Rule 16 of the State Civil Service Commission, which read as follows:

"Any person who has held a position by appointment under the civil service rules, and who has been separated from the service through no delinquency or misconduct on his part, may be reinstated without re-examination in a vacant position in the same office and in the same group, subdivision and grade, within one year from the date of such separation. * * *"

The court overruled this contention and issued a writ of mandamus compelling the Commissioner to reinstate the plaintiff. The court held that since the plaintiff had been granted a leave of absence she had not been separated from service. We quote from the opinion of the court as follows:

"But it is hardly necessary to resort to the statute for an interpretation of the conditions here. The language of the commissioner to the relator in his letter was plain and unambiguous. His words must be given their ordinary meaning in

English. He stated to the relator: 'You have been granted an indefinite leave of absence without pay.' These words could have but one meaning. The commissioner had intended at first to dismiss the relator absolutely from the service. He retracted when the relator acquainted him with the circumstances and informed him of her illness. It is idle to say that he did not intend to effect a change by his second letter. He thought better of his purpose to absolutely discharge the relator and thus 'separate her from the service'. Insteadof that disposition of her matter, he granted her 'an indefinite leave of absence'; that is to say, a right to be away from her work indefinitely, and therefore, by corollary, a right to come back whenever she pleased. She was given the absolute power to decide when she would return; the option rested with her alone. Of course, this depended upon her good faith. She would not be permitted to abuse the courtesy which had been extended to her. As soon as her health returned, it became her duty to return to the service. And she did so; that is, indicated a desire at least to do so. If there were no limitation or interpretation in the statute, the words' separation from the service' could never be held to include a leave of absence from the service. If the relator had a right at any minute to return to the service, she was no more separated from it than an employe is when on an ordinary two weeks vacation. The right to return in the latter case is fixed and definite; in the former case it is not fixed and is indefinite; but in each case there is the <u>right</u> to return, and therefore the employe is not separated from, but connected with, the service."

We are of the opinion that this same reasoning applies with equal force to the situation at hand, and that Mrs. Gray was not separated from her position as a teacher. We are, therefore, of the opinion that the Teacher Retirement Board had the authority to pass regulations covering teachers on leave of absence during the school year 1937-1938. The terms of Regulation No. 4 were complied with when the school superintendent sent to the Board the required statement. Thus, it follows that Mrs. Gray became entitled to credit for prior service.

We gather from your letter that a contract was not entered into for the school year 193 8-1939 since Mrs. Gray was still ill and unable to return to work. However, the leave of absence was extended.

We do not think that the fact that a 1938-1939 contract was not entered into affected the statusof Mrs. Gray as a teacher. We have heretofore said that the only way a member could withdraw from the Teacher Retirement System is to cease being a teacher, to die, or to be retired. When we speak of a person's ceasing to be a teacher, we mean the termination or ending of the profession of teaching.

Therefore, a person who becomes a member of the Teacher Retirement System withdraws his membership if he terminates or ends his profession as a teacher. A teacher who is temporarily prevented by ill health or serious injury from teaching and who is on leave of absence does not cease to be a teacher. If such a person intends to resume his duties as a teacher when he is able to do so, can it be said that he has ended his profession as a teacher. Clearly not. It was certainly not the legislative intent to penalize a person for being ill.

As we hold that Mrs. Gray became a member of the System July 1, 1937, and did not lose her membership by virtue of her leave of absence, then it follows that she is still a member of the Retirement System.

We have not been unmindful of that part of subsection (3) of Section 3 of the Act which provides in effect that a member who is absent for more than five years in any period of six consecutive years after becoming a member will lose his membership. On the other hand, we take the position that this provision shows the legislative intent that a bona fide leave of absence was to be recognized. We are here not concerned with the provision relating to the absence of more than five years in any period of six consecutive years. Neither six nor even five years have passed since the establishment of the System, and we are concerned in this opinion with the rights of the individual as of this date.

However, on September 4, 1941, we rendered to you Opinion No. 0-3512, which concerns the status of persons employed as reserve teachers by the Fort Worth Independent School District. Mrs. Gray was employed as a reserve teacher in the 1939-1940 and 1940-1941 school years. The principles announced in Opinion No. 0-3512 govern her status after she became a reserve teacher. Therefore, this opinion is applicable to her up to the time that she became a reserve teacher.

In view of the foregoing you are respectively advised that under the Teacher Retirement Act and Regulation No. 4 of the Teacher Retirement Board your first question is answered in the affirmative if the other conditions required by the Act as to years of service, etc., are present; and your second question, in the negative.

We answer your third and fourth questions as follows: If the Teacher Retirement Board is satisfied that the leave of absence is bona fide, then the Board must give Mrs. Gray credit for prior service and issue to Mrs. Gray a prior service certificate.

Of course, if a leave of absence is in fact a subterfuge and a means of deceit, then the Board should not recognize it. The teacher to whom such fraudulent leave was issued would cease being a teacher, and, therefore, would cease being a member of the System.

We wish to point out that under Section 4(2) of the Teacher Retirement Act that the Board of Trustees is

authorized to "fix and determine by appropriate rules and regulations how much service in any year is equivalent to one year of service". It would certainly be within the power and authority of the board to determine that a teacher on leave who rendered no service is not entitled to creditable service for the period of time that the teacher was absent. Upon such determination, therefore, the period of time missed would not be counted in making up the required "years of creditable service" under Section 5 of the Act.

2. Mrs. Bertha Graham was under contract as a teacher for the public schools of Dalhart at the time of the establishment of Teacher Retirement System. She, therefore, became a member of the System. What we have said with reference to Mrs. Gray is equally applicable to Mrs. Graham. Therefore, as to Mrs. Graham we answer your four questions in the same manner.

3. Your third fact situation is somewhat different from the preceding two. Under date of September 29, 1937, Miss Anne Kayser executed a teacher's contract. Thus, this contract was made at a later date than July 1, 1937. However, on September 14, 1937, the Dallas Board of Education passed a motion in which was said "that Miss Anne Kayser be re-elected as a teacher". (Emphasis supplied) This motion indicates that she was a teacher for the previous year. Therefore, she was a teacher on for the date of establishment of the Teacher Retirement System and became a member of the System as of that date. It follows that what we have said regarding a leave of absence applies to Miss Kayser.

On August 30, 1938, the Dallas Board of Education passed a motion stating that certain teachers, among whom was Miss Kayser, had been re-elected as teachers. However, on September 13, 1938, the Dallas Board of Education passed the following motion:

"That the resignation of Anne Kayser be accepted, and that a special teacher be authorized for City Park School at a salary of $100.00 per school month."

At first glance it would appear from the language used that Miss Kayser had ended her relationship with the public school system of Dallas. But the motion provides that a "special" teacher be authorized to teach. It appears that the "special" teacher was employed to fill Miss Kayser's position due to her absence. We, therefore, believe that this was nothing more than an extension of the original leave of absence. If in fact the motion was an extension of the leave of absence, then the matters heretofore discussed in this opinion are applicable.

If the resignation was real, and Miss Kayser thereby ended her career as a teacher, then she would no longer be a member of the Retirement System. But if in fact Miss Kayser resigned because of poor health with the intention to resume her duties when she sufficiently recovered, then she has not ceased being a teacher, and she is a member of the

System. A person who is absent from teaching even after a resignation does not thereby cease to be a teacher if such absence is temporary and if such person intends to return to the profession after such temporary absence.

We believe that Section 3(3) of the Act (which provides that a member who is any period of six consecutive years after becoming a member, is absent from service more than five years, shall thereupon cease to be a member) is applicable to the type of absences presented in this opinion. Therefore, after passage of sufficient time from the date of establishment of the Teacher Retirement System, if a member is absent from service, on leave or otherwise, for as long a period of time as is specified in Section 3(3), he shall thereupon cease to be a member.

We wish to emphasize that it is the power and duty of the Board of Trustees of the Teacher Retirement System to pass upon matters like the ones presented in this opinion. It must satisfy itself that the leave of absence is bona fide, that the absence is to be only for a temporary period of time, etc.

We also wish to emphasize that this opinion is limited to the facts involved herein. We have made certain assumptions based on the various fact situations, but if these assumptions are not real in fact, then, of course, the principles announced as to them would not be applicable.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ George W. Sparks
George W. Sparks
Assistant

APPROVED OCT. 15, 1941
/s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

GWS:WFS:jrb

APPROVED OPINION COMMITTEE
BY B/B, Chairman